Robert W. HEARD, et al., Appellants,

v.

John Cornelius ROOS, et al., Appellees.

No. 13–92–587–CV.

Court of Appeals of Texas,
Corpus Christi.

Oct. 6, 1994.

Rehearing Overruled Oct. 6, 1994.

Thomas Drought, Paul H. Homburg, III, Drought & Pipkin, Calhoun Bobbitt, Bobbitt & Halter, San Antonio, for appellants.

Robert P. Houston, Cynthia T. Sheppard, Houston, Marek & Griffin, Victoria, for appellees.

Before DORSEY, GILBERTO HINOJOSA, and FEDERICO G. HINOJOSA, Jr., JJ.

## OPINION ON MOTION
## FOR REHEARING

FEDERICO G. HINOJOSA, Jr., Justice.

We issued our opinion in this case on August 25, 1994. Appellants have filed a motion for rehearing. We withdraw our original opinion and substitute the following as the opinion of the court.

Appellants filed suit against appellees to establish an easement across lands owned by appellees. A jury found for appellees. By two points of error, appellants contend that the trial court erred by overruling appellants' motion for new trial because the jury's failure to find that a road or easement by necessity[1] existed was against the great weight and preponderance of the evidence. We affirm the judgment of the trial court.

Prior to October 27, 1919, John Wood owned approximately 14,000 acres of land in southwestern Bee County, near the Refugio County line. This property will be referred to as the Wood Ranch. The Medio Creek ran along the northern boundary of the Wood Ranch. Highway 202, which runs between Beeville and Refugio, lies to the north of the Wood Ranch, but is not accessible from the Wood Ranch. John Wood died on October 27, 1919.

According to Wood's will, the Wood Ranch was divided among his four surviving children, Chris Wood, Josephine Chesnutt, Elizabeth McCurdy, and Clark Wood. Chris Wood received 4,026 acres of the westernmost portion of the Wood Ranch. Ira Heard and Georgia Heard purchased this acreage from Chris Wood in 1937. This tract, now owned by Heard's descendants, appellants herein, will be referred to as the Heard Property. A ranch property, once owned by Phil Welder and now owned by Edward Wicker, adjoins the Heard Property on the north and west. Wicker's property lies between Highway 202 and the Heard Property. The property received by Josephine Chesnutt lies east of the Heard Property, and the property received by Elizabeth McCurdy lies east of the Chesnutt Property. A ranch

building and headquarters, referred to as the White Ranch, was originally located on the McCurdy Property. Clark Wood received the easternmost part of the original Wood Ranch. The Clark Wood Property lies east of the McCurdy Property and has access to Farm-to-Market Road 2441. By a final judgment dated January 31, 1984, the owners of the McCurdy Property established an implied easement through the Clark Wood Property.

Appellees are the descendants or successors-in-interest of the Chesnutt and McCurdy properties. Appellants sued to establish an easement through the Chesnutt and McCurdy properties. Appellants want this easement so that, together with the 1984 implied easement across the Clark Wood Property, they can have access to the Heard Property from FM 2441.

At trial, the following questions were submitted to the jury:

Question No. 1:

At the time of the death of John C. Wood was there an apparent and well defined roadway that ran from the public road, now number 2441, into the Wood Ranch, across the tracts which have been identified as belonging to the Defendants, and which furnished access to the land which has been identified as belonging to the Plaintiffs?

Question No. 3:

Were the Plaintiffs entitled to an easement by necessity over the lands of the Defendants to the public road number 2441?

The jury answered "no" to each of these questions. Question No. 2 asked the jury whether appellants were entitled to an easement by implication over appellees' lands. The jury again answered "no." Judgment was entered, based on the jury's verdict, in favor of appellees. Appellants' motion for new trial was denied by the trial court.

We initially note that a claimant who procrastinates from asserting the existence of an implied easement risks the inability to intro-

---

1. Appellants filed a motion for summary judgment based on easement by necessity. The trial court granted appellants' motion, but subsequently withdrew its order when it determined that a fact question existed.

duce sufficient convincing evidence to establish a right of way or an easement by necessity. Witnesses die, memories fail and the weight and credibility of evidence diminishes with time. The burden, however, is ultimately on the claimant to establish his entitlement.

By their first point of error, appellants complain that the trial court erred by overruling their motion for new trial because the jury's failure to find that a road existed was against the great weight and preponderance of the evidence.

When a party with the burden of proof attacks the factual sufficiency of a jury finding, his point of error on appeal should be that the jury finding is "against the great weight and preponderance of the evidence." *Croucher v. Croucher,* 660 S.W.2d 55, 58 (Tex.1983); *Hickey v. Couchman,* 797 S.W.2d 103, 109 (Tex.App.—Corpus Christi 1990, writ denied). When we review a point of error that a jury finding is against the great weight and preponderance of the evidence, we examine the entire record and set aside the verdict only if it is so contrary to the overwhelming weight and preponderance of the evidence as to be clearly wrong and manifestly unjust. *See Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986); *Dyson v. Olin Corp.,* 692 S.W.2d 456, 457 (Tex.1985); *Hickey,* 797 S.W.2d at 110.

A party seeking to establish the existence of an implied easement must show the following: the use must be 1) apparent, 2) permanent, 3) in existence at the time of the grant, 4) continuous, and 5) reasonably necessary to the enjoyment of the premises granted. *Bickler v. Bickler,* 403 S.W.2d 354, 357 (Tex.1966); *Drye v. Eagle Rock Ranch, Inc.,* 364 S.W.2d 196, 207–08 (Tex.1962).

Appellants argue that the overwhelming evidence establishes that, at the time of John Wood's death in 1919, a roadway stretched through the Chesnutt and McCurdy properties, providing access west from FM 2441 to the Heard Property. To establish the existence of the roadway in 1919, appellants rely primarily on the testimony of William McCurdy, Jr., son of Elizabeth McCurdy. At the time of trial, McCurdy was over eighty years old and his memory of relevant events was apparently lost. Appellants offered and the trial court admitted, over appellees' objection, McCurdy's testimony in the 1984 lawsuit which established an implied easement through the Clark Wood Property.

McCurdy testified that he had traveled along the purported roadway only one time, in 1921 or 1922, about two or three years after John Wood's death. He was, at the time, only 11 or 12 years of age. He was visiting the John Wood Ranch with his uncle, Chris Wood, and his mother, Elizabeth McCurdy. According to McCurdy, Elizabeth had never seen the property her father had devised to her at the time of his death. McCurdy remembered traveling on Highway 202, through the Wicker tract (then owned by Phil Welder) and the Chesnutt Property, to the ranch building and headquarters on the McCurdy tract. According to McCurdy, the road was visible and suitable for automobile traffic, and looked like it had been there a long time.

Appellees attack the credibility of McCurdy's testimony because of his failed memory at the time of trial. Appellees also contend that, even if McCurdy's testimony is taken as true, it only supports a jury finding that a roadway existed, at the earliest, in 1922, three years after Wood's death.

Appellants argue that the credibility of McCurdy's testimony is not an issue. McCurdy testified that, in 1921 or 1922, a road extended in a westerly direction, from the McCurdy Property to Highway 202. Appellants argue that it was not in McCurdy's interest to give such testimony because McCurdy was attempting to establish an easement by necessity in an easterly direction from the McCurdy Property, through the Clark Wood Property, to FM 2441. Therefore, McCurdy's testimony that a road existed from the McCurdy Property to the west would negate the necessity of an easement to the east.

Appellants contend that the existence of a roadway is further established by a map of the Heard Property prepared in 1937, which was introduced into evidence. Appellants argue that this map clearly shows a marked

road running through the Heard Property (from the western boundary of the Heard Property to the western boundary of the Chesnutt property), and that it should be inferred that the marked road extended, through appellees' property, to FM 2441. Appellants additionally infer that, since Ira Heard entered his property from the west, from Highway 202, the marked road to the east must have been used by John Wood, prior to 1919, to travel to and from the rest of his ranch property. Appellees argue that, even if we were to assume that the map accurately reflects the existence of a road in 1937, the evidence does not support a finding that such a road existed at the time of John Wood's death in 1919.

 It is within the province of the jury to evaluate conflicting evidence and assess the credibility and weight to be given to each witness and each piece of evidence proffered. *See generally Pool v. Ford Motor Co.*, 715 S.W.2d 629, 634 (Tex.1986); *Dyson*, 692 S.W.2d at 458. This Court is not free to merely substitute its judgment for that of the jury. *Herbert v. Herbert*, 754 S.W.2d 141, 144 (Tex.1988).

After reviewing the entire record, we cannot say that the overwhelming weight and preponderance of the evidence shows that a roadway existed in 1919. Appellants produced no real evidence that, at the time of John Wood's death in 1919, there existed an apparent and well defined roadway that ran from FM 2441, into the Wood Ranch, across the tracts now owned by appellees, and furnished access to appellants' land. Nor is there any evidence to support a conclusion that there was an apparent and continuous use of the roadway, necessary for the fair and enjoyable use of the property. Appellants offer nothing more than unsubstantiated and inferential leaps without support from the evidence. Appellants' argument that John Wood could not have intended to devise 4,026 acres of working cattle ranch property to his son, Chris Wood, to which no access was available from an existing roadway across the remaining properties, is also not supported by the evidence.

We hold that the jury's finding that no roadway existed in 1919 is not so contrary to the overwhelming weight and preponderance of the evidence as to be clearly wrong and manifestly unjust. Appellants' first point of error is overruled.

 By their second point of error, appellants complain that the trial court erred by overruling their motion for new trial because the jury's failure to find an easement by necessity was against the great weight and preponderance of the evidence.

 To establish an easement by necessity, a party must establish 1) unity of ownership of dominant and servient estates prior to severance, 2) the necessity of a roadway, and 3) that the necessity existed at the time the estates were severed. *Koonce v. Brite Estate*, 663 S.W.2d 451, 452 (Tex.1984); *Estate of Waggoner v. Gleghorn*, 378 S.W.2d 47, 48 (Tex.1964); *Jordan v. Rash*, 745 S.W.2d 549, 553 (Tex.App.—Waco 1988, no writ); *Persons v. Russell*, 625 S.W.2d 387, 388–389 (Tex.App.—Tyler 1981, no writ). *See Duff v. Mathews*, 158 Tex. 333, 311 S.W.2d 637, 640 (1958). "The way of necessity must be more than one of convenience for if the owner of the land can use another way, he cannot claim by implication to pass over that of another to get to his own." *Duff*, 311 S.W.2d at 640.

Unity of ownership was stipulated by the parties. To establish an easement by necessity, appellants offered the testimony of Robert Heard, Edward Wicker, Martha Warner and John Mills.

Robert Heard testified that he first went on the Heard property shortly after 1937, from the west, off Highway 202, across Claude Heard's property. Claude Heard permitted Ira Heard and others to cross his property from Highway 202 to reach theirs. Robert Heard owns no right to cross any of the surrounding lands and, although he has crossed the Medio Creek when dry, he has no right to cross the creek or the property across it.

Edward Wicker testified that he acquired his property from his grandfather, Claude Heard, who had given limited permission to Ira Heard and four of Heard's relatives to travel through the Wicker property to obtain

access to Highway 202. Wicker testified he allowed appellants to cross his property during bad weather but denied granting appellants a formal easement. He did not recognize any right owned by appellants to cross his property. Wicker admitted, however, that his personal knowledge about the property at issue only went back to the mid–1940's and not before.

Appellants also offered the testimony of Martha Warner, a title lawyer employed by the Southwest Land Title Company of Beeville. Warner was employed by appellants to search all relevant surveys taken of the land in question and to locate a road called the "Old San Patricio Road," "Goliad to San Patricio Road," and "Sander's Store Road." Warner testified that she found no evidence in the abstracts of title to the Heard property of any road that entered the property. Warner opined that, based on her review of the abstracts of title to the property during the relevant time period, there was no record of any such road. In her examination of the applicable surveys, Warner found evidence of only one road located within appellants' property.

Appellees' expert witness, Dr. Jesus De La Teja, testified that, based on his examination of various maps, letters and sketches from the Texas General Land Office, and minutes of the Bee County Commissioner's Court, there was evidence that, at least in 1856 or 1857, there existed a public road known as the "San Patricio to Goliad" road which might have crossed the Medio Creek at the northwest corner of the Heard property. There is also evidence in the commissioner's minutes that there were certain closures of the San Patricio Road beginning in 1925, but no evidence that these occurred in the Medio Creek area.

Appellants challenged the credibility of the old surveys and maps. John Mills, appellants' expert witness, testified that he had examined the public records and heard Dr. De La Teja's testimony and that he did not believe that such a road existed in 1919. He testified that by 1919 there were other roads in the vicinity that would have served the purpose the "Old San Patricio to Goliad Road" may have once served. Appellants contend that these same documents show that the road was abandoned prior to 1879. Warner testified that she found no evidence of a road called the "Old San Patricio Road," "Goliad to San Patricio Road," or "Sander's Store Road" from her review of the abstracts of title to the property during the relevant time period.

As we have previously stated, it is within the province of the jury to evaluate conflicting evidence and assess the credibility and weight to be given to each witness and each piece of evidence proffered. *Pool*, 715 S.W.2d at 634; *Dyson*, 692 S.W.2d at 458.

After reviewing the entire record, we conclude that appellants introduced overwhelming evidence showing the necessity of a roadway, *i.e.*, that no public road provides a way of ingress or egress to appellants' property and that appellants own no right of way across any adjoining tract. This evidence came from the testimony of Heard, Wicker and Warner. However, proof of unity of ownership and necessity of a roadway is not enough to establish an easement by necessity. Proof that the necessity existed at the time the estates were severed must also be shown. Appellants point to no evidence in the record, and we find none, which shows that the necessity existed at the time the estates were severed in 1919.

We hold that the jury's finding that appellants are not entitled to an easement by necessity is not so contrary to the overwhelming weight and preponderance of the evidence as to be clearly wrong and manifestly unjust. Appellants' second point of error is overruled.

The judgment of the trial court is AFFIRMED. Appellants' motion for rehearing is DENIED.