Leroy G. MACHALA, et al., Appellants,

v.

D. Ted WEEMS, Appellee.

No. 06–00–00133–CV.

Court of Appeals of Texas,
Texarkana.

Submitted April 2, 2001.

Decided Aug. 21, 2001.

Rehearing Overruled Oct. 10, 2001.

Michael A. McEnrue, Mosier & McEnrue, PC, Houston, for Appellant.

Sally A. Jones, Elliott, Heinlein & Jones, PC, Crosby, for Appellee.

Before CORNELIUS, C.J., GRANT and ROSS, JJ.

Opinion by Justice GRANT.

Leroy G. Machala, Margaret A. Janik, Stanley Machala, Floyd F. Wolcik, Lucille Martin, Wilbur Krenek, and Floyd Stasney, Appellants, sued D. Ted Weems, Appellee, for declaratory, injunctive, and other relief regarding Weems's alleged interference with Appellants' alleged easement over certain Harris County property owned by Weems. Weems counterclaimed, seeking the trial court's declaration that Appellants have no right, title, or interest in any of the property belonging to him.

After a bench trial, the trial court rendered a take-nothing judgment against Appellants and further ordered that Appellants "have no easement right, title or interest in, to, or across Defendant's [Weems's] real property along the northern edge of defendant's property continuing to Cedar Bayou, as described in the attached Exhibit A...."

### Statement of Facts

On June 22, 1897, William H. Scott assigned Patent No. 544, Volume 46, a 640–acre tract of land located about 23 miles "N 67 E" of the City of Houston in eastern

Harris County, to G.H. Pendarvis. The property is located near the present town of Crosby. (Appellants' brief asserts, and Weems does not dispute, that the tract is bordered on the east by Cedar Bayou, the eastern boundary line of Harris County.)

By quitclaim deeds in 1907 and filed for record in 1908, Joseph Skrabanek and Marie Baca, widow of J.F. Baca, deceased, and their children conveyed to Harris County adjoining 30–foot rights-of-way for the Carter Road (now Krenek Road) extension, to the direct east of the Pendarvis property line.

In 1914, Pendarvis conveyed, by general warranty deed, five parcels of approximately 20.5 acres each to, respectively, Charles Marek, I.P. Krenek, Charles Machala, F.J. Moravek, and Frank Wolcik. Appellants are the successors in title to the five individuals who purchased the 20.5–acre tracts from Pendarvis in 1914.

At trial, over Weems's objection, Appellants introduced Plaintiffs' Exhibit 6 through the testimony of Leroy Machala, a retired engineer and surveyor. Machala testified that he was given the original of Plaintiffs' Exhibit 6 by his grandparents, Charles and Mary Machala, at the time the land was conveyed to him in 1914. Exhibit 6, described as a "sketch," shows on its face to have been prepared by J.W. Gillespie, designated as a "surveyor," in 1914 and depicts what it refers to as a "subdivision of 129 ½ Acres out of the N.W. Corner of the James Scott survey for J. Skrabanek, F.J. Moravek, I.P. Krenek, Frank Volcik, Charlie Machala and Charlie Marek." Exhibit 6, according to Machala's testimony, shows a diagram of the tracts conveyed to the named five individuals receiving the original Pendarvis conveyance, plus an adjoining 27–acre tract, shown as owned by J. Skrabanek, whose successor in interest is not a party to this litigation. The metes and bounds of the tracts shown on Exhibit 6 match those of the sides of

the property lines (at least as to those sides not fronting on Cedar Bayou) set out in the five 1914 warranty deeds to Marek, Krenek, Machala, Moravek, and Wolcik. The exhibit shows what is referred to as a "county road" running in the remainder of the Pendarvis tract from the west line of the Scott survey below the Charles Marek tract (the southernmost tract of the five), all the way to Cedar Bayou. The 1914 general warranty deeds do not refer to this sketch, and the sketch was not entered into the Harris County deed records. Machala testified that the county road shown on Exhibit 6 has never, to his knowledge, been dedicated to Harris County.

Defendant's Exhibit 2 was a 1961 quitclaim deed of right-of-way by N.B. O'Grady of a 30–foot right-of-way to Harris County. This dedication does not follow the straight line of the "county road" depicted on Plaintiffs' Exhibit 6, but rather shows a jog in the road to the south. None of the witnesses could explain why the dedication established the county road to the south of the southern property line of the southernmost of Appellants' properties. Plaintiffs' Exhibit 7 depicts the position of the dedicated county road as it now stands.

In 1970, the current owners of the five 20.5–acre tracts granted to each other mutual 50–foot easements for ingress and egress that ran the entire length of the western boundaries of their tracts. These easements extend from the north line of the Scott survey to south of the "North Line of Krenek Road."

From 1959, when he bought his grandfather's parcel, until 1996, Machala and all of the other adjoining landowners had access to their properties through the county road, although the exact nature and extent of such use is not described. Appellants used their property to gather firewood and

to hunt, and sold timber off the land from 1988 through 1991. The property of all Appellants was, at the time of trial, unimproved. Counsel for Appellants stated that the testimony from all other Appellants would be cumulative of Machala's testimony and called no other witnesses at trial.

Weems acquired his land by warranty deed from Billy E. Murff and wife in 1996. He acquired an 18.53–acre tract of land in the Scott survey, a portion of a 360.380–acre tract previously acquired by Murff. Weems constructed a house on his property. His title policy does not mention the county road referred to in Plaintiffs' Exhibit 6, and there are no deeds that convey that part of Krenek Road south of Weems's property. Before conveying this parcel to Weems, Murff had a gate on the property leading to the Appellants' lands, and keys were given to all the landowners of the five adjoining tracts. When he acquired the property, Weems replaced the gate, but did not provide Appellants with keys. Weems also constructed a fence across the northern boundary of his property.

Weems introduced two affidavits from individuals who had leased portions of the Pendarvis land at various times between the 1920's and 1950's. They swore that while they were occupying the property, the boundary line between what was then the Pendarvis tract, now belonging to Weems, and the southernmost boundary of the five tracts, belonging to Appellants, was fenced off. The affidavits did not refer to any roadway along the northern boundary of the Pendarvis tract, and neither affidavit referred to Carter Road or Krenek Road as being significant in describing the location of the Pendarvis tract. At about the time of the 1961 O'Grady road dedication, a ditch was constructed along the north side of the dedicated portion of Krenek Road. The ditch

was built directly across the land that Appellants now claim as an easement. There is no access across this ditch except over an 18–foot culvert, and the culvert does not allow access by a motor vehicle.

Weems testified that he and his immediate neighbor, Mr. Norsworthy, who is not a party to this litigation, allow access across the culvert directly to the 1970 easement across Appellants' properties, through which Machala has access to his property. All of the Appellants have access to their properties in this manner.

In their petition, Appellants requested the trial court to issue a declaratory judgment that

[T]he roadway easement historically used by the Plaintiffs at the East end of the improved portion of Krenek Road has been:

(a) Expressly granted and/or reserved to the Plaintiffs;

(b) Expressly created by implication;

(c) Expressly created by necessity;

(d) Expressly created by estoppel; and/or

(e) Expressly created by prescription and/or adverse possession.

Machala testified that he wanted a 60–foot easement along the southern boundary of the Marek tract all the way to Cedar Bayou, that width being sought because that is the minimum width required by the county for a dedication of a right-of-way. He wanted that or nothing. At the conclusion of Machala's testimony, Machala conferred with his attorney, his attorney stated to the court:

MR. LANNIE: Judge, I suspect that all the testimony we would get from these witnesses would be cumulative. And I just spoke to Mr. Machala about it. It would be cumulative of the testimony we've already got in the record, and I think we have all of the documents

entered in there that is needed to reflect these parties' rights based on the documents generated in 1914.

THE COURT: All right. Plaintiff rests?

MR. LANNIE: Huh?

THE COURT: Plaintiffs rest?

MR. LANNIE: Yes, Judge.

MS. JONES: Your Honor, the defendant rests.

### Standard of Review

This case was tried to the trial court without a jury. No findings of fact or conclusions of law were requested or filed. The trial court's only specific finding was that Appellants have no easement right, title, or interest in, to, or across Weems's real property along the northern edge of that property, continuing to Cedar Bayou.

· In this situation, the judgment must be upheld on any theory that finds support in the evidence. *Strackbein v. Prewitt,* 671 S.W.2d 37, 38 (Tex.1984). The judgment must be affirmed if we find any actual basis in the evidence to do so. *Sutherland v. Cobern,* 843 S.W.2d 127, 131 (Tex.App.— Texarkana 1992, writ denied).

▆ The judgment is challenged on both **legal** and **factual** sufficiency grounds. When the party having the burden of proof suffers an unfavorable finding, the point of error challenging the **legal** sufficiency of the evidence should be that the fact or issue was established as a matter of law. The standard of review for **legal** sufficiency requires a determination by the appellate court of whether, considering only the evidence and inferences that support a factual finding in favor of the party having the burden of proof in a light most favorable to such findings, and disregarding all evidence and inferences to the contrary, there is any probative evidence which supports the findings. *Dow Chem. Co. v. Francis,* 46 S.W.3d 237 (Tex.2001); *Sterner v. Marathon Oil Co.,* 767 S.W.2d

686, 690 (Tex.1989). Insufficient evidence or **factual insufficiency** involves a finding that is so against the great weight and preponderance of the evidence as to be manifestly wrong. If more than a scintilla of evidence supports the finding, the no evidence issue fails. When the party having the burden of proof complains of an unfavorable finding, the issue on appeal should allege that the findings are against the great weight and preponderance of the evidence. In reviewing an issue on appeal claiming that a finding is against the great weight and preponderance of the evidence, both the evidence which tends to prove the existence of a vital fact as well as evidence which tends to disprove its existence are considered by the appellate court. The appellate court cannot substitute its judgment for that of the fact finder even if we find a fact contrary to that found by the trier of fact, provided the finding is supported by probative evidence and is not against the great weight and preponderance of the evidence. *Pool v. Ford Motor Co.,* 715 S.W.2d 629 (Tex.1986). Appellants had the burden of proof to establish the easement. *See Duff v. Matthews,* 158 Tex. 333, 311 S.W.2d 637, 641 (1958).

### Easements in General

▆ An easement is defined as a liberty, privilege, or advantage without profit granted to a person, either personally or by virtue of his ownership of a specified parcel of land, to use another parcel of land for some limited purpose. The parcel owned by the grantor of the easement is called the servient estate, and the parcel benefitted by the easement is called the dominant estate. An easement in which the benefits are for a specific parcel of land, regardless of the identity of the owner, are easements appurtenant. *Daniel v. Fox,* 917 S.W.2d 106, 110 (Tex.App.—San Antonio 1996, writ denied).

Easements may be created by express grant,[1] by implication,[2] by necessity,[3] by estoppel,[4] or by prescription.[5] Appellants contend they have established entitlement to an easement by, alternatively or collectively, necessity, estoppel, and/or prescription. Appellants also contend there was a "common-law" dedication.

### Easement by Necessity

Appellants first argue they have demonstrated their entitlement to an easement by necessity.

An easement by necessity arises from a presumption that where a grantor conveys to a person land that is totally surrounded by other lands belonging either to the grantor or to the grantor and other persons, there was an intention to grant a roadway to enable the grantee to have full enjoyment of the property conveyed and the failure to grant a passageway was an oversight and will be implied in the grant. *Grobe v. Ottmers*, 224 S.W.2d 487, 489 (Tex.Civ.App.—San Antonio 1949, writ ref'd n.r.e.).

> [T]he law is well settled that when an owner of land conveys an inner portion of such land, and the portion conveyed is entirely surrounded by land of land owned by others, an easement for the purpose of access to the land conveyed is created across the retained land of the grantor.

*Parshall v. Crabtree*, 516 S.W.2d 216, 218–19 (Tex.Civ.App.—San Antonio 1974, writ ref'd n.r.e.).

There are three requisites for establishing an easement by necessity: 1)

unity of ownership of alleged dominant and servient estates; 2) the roadway is a necessity, not just a convenience; and 3) the necessity existed at the time of the severance of the two estates. *Duff*, 311 S.W.2d at 641; *see also Estate of Waggoner v. Gleghorn*, 378 S.W.2d 47, 48 (Tex.1964); *Daniel*, 917 S.W.2d at 111. A way of necessity must be more than a convenience; if the owner of the land can use another way, he cannot claim by implication a right to pass over that of another to get to his own. *Bains v. Parker*, 143 Tex. 57, 182 S.W.2d 397, 399 (1944).

Reviewing the record, we find that Appellants have established the first requisite, i.e., unity of ownership. The evidence shows the tract of Appellants' predecessors in title surrounded on at least three sides by property owned by the grantor or others. Their remaining boundary is Cedar Bayou. Affidavits of Gus Stasney and H.F. Seaberg mention that the land across the bayou, in Liberty County, also belonged to Pendarvis, the original grantor.

However, we find that Appellants failed to produce evidence regarding required elements that the easement/roadway they seek to establish would be a necessity, rather than mere convenience, and that such necessity existed at the time of the severance of title of their properties from that of the original grantor. Machala did not testify to the *necessity*, rather than mere convenience, of the use of the 60–foot–wide path running all the way to Cedar Bayou along the southernmost parcel, designated in Exhibit 6 as the Marek tract.

---

1. *See, e.g., Compton v. Texas Southeastern Gas Co.*, 315 S.W.2d 345, 349–50 (Tex.Civ.App.—Houston 1958, writ ref'd n.r.e.).

2. *See, e.g., Bickler v. Bickler*, 403 S.W.2d 354, 357 (Tex.1966).

3. *See, e.g., Alley v. Carleton*, 29 Tex. 74, 78, 1867 WL 4482 (1867).

4. *See, e.g., Exxon Corp. v. Schutzmaier*, 537 S.W.2d 282, 285 (Tex.Civ.App.—Beaumont 1976, no writ).

5. *See, e.g., Shepard v. Galveston, H. & H.R. Co.*, 2 Tex.Civ.App. 535, 22 S.W. 267, 268 (1893, no writ).

There is no testimony or other evidence of the presence or absence of other means of ingress and egress to the properties in question. The exhibits do not indicate on their faces the presence or absence of such alternative means. Further, even if such testimony or other evidence would somehow establish a necessity, as required, there is no evidence that such necessity existed at the time of the severance of the estates in 1914. There is no evidence, either testimonial or documentary, that the only means by which Appellants' predecessors in title could access their property in 1914 was over the county road, which was not mentioned in any of the deeds of title of Appellants' predecessors, nor in any other document of record produced at trial. In *Heard v. Roos,* 885 S.W.2d 592 (Tex.App.—Corpus Christi 1994, no writ), the proponents were able to establish unity of ownership and necessity, but failed to establish that the necessity existed at the time the estates were severed. *Id.* at 595–96. Appellants' proof in the present case is insufficient to establish either present necessity or necessity at the time Appellants' predecessors in title acquired their property interest in 1914. Exhibit 6's depiction of and designation as a "county road" running adjacent to the southern boundary of the southernmost parcel of Appellants' lands does not, without more, establish the designated area of that "road" as an easement by necessity.

We hold that Appellants have failed to establish as a matter of law the requisite elements of an easement by necessity; we further hold that the trial court's determination that Appellants did not establish such requisite elements was not so against the great weight and preponderance of the evidence as to be manifestly wrong and unjust. We overrule Appellants' issue on appeal challenging both the legal and factual sufficiency of the trial court's ruling regarding easement by necessity.

## Easement by Estoppel

Appellants further contend they have established the existence of an easement through the doctrine of easement by estoppel.

An easement, as a general rule, is required to be in writing, under the statute of frauds. *See* Kirk Kuykendall, *Easements—Licenses—Statute of Frauds—Estoppel—Creation of Easements by Oral Agreement,* 13 BAYLOR L.REV. 180 (1961). An exception to this general rule is the doctrine of easement by estoppel, a creature of equity designed to prevent injustice and protect innocent parties from fraud. *Stallman v. Newman,* 9 S.W.3d 243, 247 (Tex.App.—Houston [14th Dist.] 1999, pet. denied); *Shipp v. Stoker,* 923 S.W.2d 100, 102 (Tex.App.—Texarkana 1996, writ denied). This doctrine is not clearly defined, and its application depends on the facts of each case. *Drye v. Eagle Rock Ranch, Inc.,* 364 S.W.2d 196, 209 (Tex.1962); *Stallman,* 9 S.W.3d at 246.

The doctrine of easement by estoppel holds that the owner of the alleged servient estate may be estopped to deny the existence of an easement if he has made representations that have been acted on by the owner of the alleged servient estate. *Holden v. Weidenfeller,* 929 S.W.2d 124, 131 (Tex.App.—San Antonio 1996, writ denied). There are three essential elements: 1) a representation made to the promisee; 2) the promisee's belief in that promise; and 3) the promisee's reliance on the promise. *Stallman,* 9 S.W.3d at 246; *Shipp,* 923 S.W.2d at 102. Essential to the creation of an easement by estoppel is that the misrepresentation be communicated to, believed, and relied on by the innocent party. *Storms v. Tuck,* 579 S.W.2d 447, 452 (Tex.1979). The elements apply at the time the communication creating the alleged easement is made. *Holden,* 929 S.W.2d at 131.

Machala testified that he and his wife received Plaintiffs' Exhibit 6 in 1959 from his grandparents, the original grantees, when he acquired title to his 20.5–acre tract. He stated that based on his initial investigation at the time he acquired the land, he considered that there was a county road all the way to Cedar Bayou. He further testified, based on the dates on the document as compared to the dates of the original deeds, that it was generated prior to such conveyance. We note, however, that Exhibit 6 does not contain the name of Pendarvis, the original grantor. Exhibit 6 does not state to whom it was delivered, and there is no testimony that even Machala's grandparents, his predecessors in title, relied on this document in purchasing their land. We have no testimony from either Machala or the other Appellants that their predecessors had this document in their possession prior to acquiring their properties. In other words, there is a complete absence of evidence that Pendarvis misrepresented the existence of the county road to Machala or any other purchaser, or that even if such a misrepresentation was made, that any of these individuals in 1914 relied on it.

We hold that Appellants have failed to establish as a matter of law the requisite elements of easement by estoppel; we further hold that Appellants did not establish that the trial court's failure to find such requisite elements was not so against the great weight and preponderance of the evidence as to be manifestly wrong and unjust. We overrule Appellants' issue on appeal challenging both the legal and factual insufficiency of the trial court's ruling regarding easement by estoppel.

### Common–Law Dedication

Appellants further contend that they have established as a matter of law their right to enforce the public's easement by common-law dedication and that the trial court's failure to find such easement by common-law dedication was so far against the great weight and preponderance of the evidence as to manifestly wrong and unjust.

"Dedication" of a private roadway is the setting aside of such roadway for the public use for a passageway. *Viscardi v. Pajestka*, 576 S.W.2d 16, 18 (Tex. 1978). Texas courts have recognized the doctrine that dedication of land to public use need not be shown by deed or by public use of any particular length of time:

> It is sufficient if the record shows unequivocal acts or declarations of the landowner, dedicating same to public use, and where others act on the faith of such dedication, the landowner will be estopped to deny the dedication, or to make any future use of the property inconsistent with any purpose for which the land was dedicated.... [I]t is necessary that there should be an appropriation of land by the owner to public use, in the one case by some express manifestation of his purpose to devote the land to the public use, in the other by some act or course of conduct from which the law will imply such an event.

*Owens v. Hockett*, 151 Tex. 503, 251 S.W.2d 957, 958 (1952). The essential elements of an implied dedication are

> 1) the acts of the landowner induced the belief that the landowner intended to dedicate the road to the public use;
>
> 2) the landowner was competent to do so;
>
> 3) the public relied on these acts and will be served by the dedication; and
>
> 4) there was an offer and acceptance of the dedication.

*Lindner v. Hill*, 691 S.W.2d 590, 592 (Tex. 1985); *Las Vegas Pecan & Cattle Co. v. Zavala County*, 682 S.W.2d 254, 256 (Tex. 1984). The intent of the grantor is a question of fact. *Viscardi*, 576 S.W.2d at 19.

The act of the owner must be shown by "*some clear and unequivocal act or declaration of the owner.*" *Dunn v. Deussen,* 268 S.W.2d 266, 268 (Tex.Civ.App.—Fort Worth 1954, writ ref'd n.r.e.) (emphasis added).

Appellants' evidence in this case consists of: 1) Plaintiffs' Exhibit 6, an unrecorded sketch of the properties in the area, on which is shown an area referred to as a "county road"; 2) Machala's belief that the area in question was a county road; and 3) Machala's testimony that he used that road to access his property. There is no evidence of Pendarvis's intent to dedicate the area in dispute; Exhibit 6 does not, on its face, demonstrate that Pendarvis was responsible for its preparation. No document of record that was introduced into evidence, including the five deeds by which Appellants' predecessors obtained title to their respective tracts, contains any reference to any county road to the south of the Marek tract. The two affidavits, filed in the records of Harris County, contain rather detailed descriptions of the Pendarvis property in the 1920's and make no mention of any county road. Further, there is a complete absence of evidence of any public use of this "county road." In *Viscardi v. Pajestka,* evidence of prior use by the public, uninterrupted use for over fifty years, supported the Court's conclusion that the passageway in question in that case had been dedicated to public use. *Viscardi,* 576 S.W.2d at 19. In *Las Vegas Pecan & Cattle Company v. Zavala County,* there was uncontroverted evidence that the roadway in question had been used, not only by the witness personally, but by the general public for at least thirty years. The road therein was used as a mail route and a school bus route. No one had ever been denied permission by adjoining landowners to use the roadway. *Las Vegas Pecan & Cattle Co.,* 682 S.W.2d at 256–57; *see also O'Connor v. Gragg,* 161 Tex. 273, 339 S.W.2d 878, 881–82 (1960); *Dunn,* 268

S.W.2d at 268. In the present case, there is no similar evidence.

We hold that Appellants' evidence in the present case failed to establish, either by word or deed, Pendarvis's express or implied dedication of a road for public use, or any public reliance on such dedication.

We hold that Appellants have failed to establish as a matter of law the requisite elements of a common-law dedication; we further hold that Appellants did not establish that the trial court's failure to find such requisite elements was so against the great weight and preponderance of the evidence as to be manifestly wrong and unjust. We overrule Appellants' issue on appeal challenging both the legal and factual sufficiency of the trial court's ruling regarding easement by necessity.

### Public Easement by Prescription

Appellants finally contend that they proved the requisite elements to establish a public easement by prescription.

■ To obtain a prescriptive easement, one must use someone else's land in a manner that is open, notorious, continuous, exclusive, and adverse for the requisite period of time. *Brooks v. Jones,* 578 S.W.2d 669, 673 (Tex.1979). The public may also acquire an easement in this manner, and the requisite period of use is ten years. *Barstow v. State,* 742 S.W.2d 495, 499 (Tex.App.—Austin 1987, writ denied). In *Texas Western Railway Company v. Wilson,* 83 Tex. 153, 18 S.W. 325 (1892), the Supreme Court stated

The doctrine is well established that the burden of proof is upon the party claiming an easement in the land of another, without any contact or express grant thereto, to establish all of the necessary facts from which the right may be presumed in his favor. He must clearly show open and peaceable possession for

the full period required under the statute to preclude a recovery of land against one having no other title, and with at least the implied acquiescence of the owner, and that during all of such time the use and enjoyment of the right has been exclusive, uninterrupted, and continuous, and under a claim of right adversely to the owner of the fee. If there is a failure to establish any of these essential elements by a preponderance of evidence, the claim to the easement can not be maintained.

*Id.* at 325–26.

■ Appellants rely on *Schultz v. Shatto,* 150 Tex. 130, 237 S.W.2d 609 (1951), involving land alleged to be a public street in the City of Columbus, Texas, in support of their argument. The Court therein held that in order to establish a right-of-way by prescription, there must be a showing that uninterrupted use of the right-of-way has been made by the public, under adverse claim of right, for the period of limitation. This claim may be shown by circumstantial evidence sufficient to sustain such conclusion, but must be proven in order to sustain the alleged prescriptive right:

> The use of lands of another by the public as a roadway, with the acquiescence of the landowner, will not ripen into a prescriptive right, no matter what period of time such use may continue, unless the evidence shows, circumstantially or otherwise, that the use was by claim of right adverse to the landowner, of which adverse claim the latter has notice.

*Id.* at 614. In that case, the Supreme Court found that in view of the proof presented, the jury therein was permitted to infer that such use was adverse and under claim of right from the nature of the use of the property and the circumstances connected with its possession. *Id.* at 615. Earlier in the opinion, the Court set forth the "uncontradicted" evidence which it

found sufficient to support the jury's verdict in that case:

> It is shown that from 1869 down to the time the respondent secured a deed to the land in controversy—August 26, 1948—no claim was ever made to this land by anyone, nor was there any interference with the public's use of the land as a street. Since 1927, (when the city was incorporated) it was testified by the city manager and by a member of the City Council that the city had worked this as a street, putting gravel on it, dragging it, and keeping down the weeds on it. The city built and paid for a sidewalk in front of this land along Milam Street, and inclined the walk so traffic could easily pass over and onto the tract of land. This is the only sidewalk in that block paid for by the city. The evidence shows that a delivery man, in servicing the places of business fronting on this passageway as well as other buildings, and the rears of which were reached by using this passageway, has driven over this passageway daily for 20 years prior to the trial.... Evidence was introduced showing this property was used as a passageway by the public as far back as 1894 and continuously since that time, and without any adverse claim or obstructions until 1948 after respondent secured his deed.

*Id.* at 612.

■ Nothing even close to that type of testimony was produced by Appellants. Machala's testimony certainly does not demonstrate open or continuous use of the land sought to be established as a public way by prescription, i.e., the entire southern line of the southernmost property, all the way to Cedar Bayou. His only testimony is that he formerly used an area, in or near what is now Weems's property, to access his land; that he understood there was an easement; and that the portion of

Krenek Road to the west of the southern end of the boundary of the southernmost parcel of Appellants' land had been dedicated to and maintained by the county, with some testimony that unpaved portions thereof had been mowed by the county. Machala's testimony regarding the exact nature of his and the other Appellants' use of the 60–foot–wide strip is very vague. Nowhere did he testify that he or the other adjoining landowners ever openly and continuously used the entire 60–foot–wide strip labeled as "COUNTY ROAD" on Exhibit 6. There was no testimony that the public generally, over the years since Appellants acquired their properties, made open, notorious, and adverse use of a 60–foot right-of-way from where the paved part of Krenek Road ended all the way to Cedar Bayou.

We would also question whether Appellants' access prior to Weems's acquisition of his property was adverse on behalf of the public. The testimony shows that Murff, Weems's predecessor, had put a gate at the entrance and had given keys to Appellants. Such fact is certainly consistent with an interpretation that Appellants' access across the area was, and always had been, by permission from the landowner. A user by license or permission of the owner of the land sought to be impressed with such an easement of travel is not adverse, and affords no basis for prescription, where the owner did not consent to the user of his land by the plaintiff as of right. *Miller v. Moravietz*, 59 S.W.2d 242, 243 (Tex.Civ.App.—Beaumont 1933, no writ). Use by express or implied permission or license, no matter how long continued, cannot ripen into an easement by prescription since adverse use is lacking. *Myers v. Blair*, 611 So.2d 969, 971 (Miss.1992).

We hold that Appellants have failed to establish as a matter of law the elements of easement by prescription; we further hold that the trial court's failure to find that they have failed to establish public easement by prescription is not so against the great weight and preponderance of the evidence as to be manifestly wrong and unjust. Appellants' legal and factual sufficiency points as to public easement by prescription are overruled.

The judgment of the trial court is affirmed.