

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-19-00051-CV

_____


GARLAND "SKEET" AMASON, Appellant

V.

MICHELLE BURROWS, Appellee


On Appeal from the 202nd District Court
Bowie County, Texas
Trial Court No. 18C0763-202



Before Morriss, C.J., Burgess and Stevens, JJ.
Memorandum Opinion by Chief Justice Morriss

# MEMORANDUM OPINION

In 2005, Garland "Skeet" Amason placed a locked gate across a road (the Road) that traverses his property from an intersection with County Road 3002 to property purportedly owned by Michelle Burrows.[1] Burrows claimed the Road as a public road and sued Amason for access to her property;[2] for a declaratory judgment that the Road was either a public road or that she had an implied easement across Amason's property; and for an injunction, damages, and attorney fees. After a period of discovery, Burrows moved for a traditional, partial summary judgment on the issues of whether the Road was a public road and whether she had an implied easement or an easement by estoppel. After a hearing, the trial court granted partial summary judgment and determined that the Road was a public road. The trial court later entered a final judgment, after a bench trial on damages, that reaffirmed its partial summary judgment that the Road was a public road, required Amason to remove all barriers on the Road, and awarded Burrows damages, attorney fees, and costs of court.

In this appeal, Amason challenges the partial summary judgment that the Road was a public road, the admission of testimony from Burrows's damages expert, the award of damages, and the award of attorney fees and costs. We reverse the partial summary judgment because (1) the summary-judgment evidence did not establish as a matter of law that the Road was a public road

---

[1]It is unclear from the record whether the land claimed by Burrows is owned by her individually or as trustee of a trust created by her parents. Burrows filed her suit only in her individual capacity. We refer to this property as "the Burrows property."

[2]Although Burrows also asserted that she has a right to use the Road because she has an implied easement across Amason's property and that Amason is estopped from denying the easement, this appeal only concerns her claim that the Road is a public road, as the trial court determined in a partial summary judgment.

2

and (2) the award of damages, attorney fees, and costs, predicated on the summary judgment, must be reversed.

*(1)      The Summary-Judgment Evidence Did Not Establish as a Matter of Law that the Road Was a Public Road*

In support of her motion for partial summary judgment, Burrows produced evidence showing that Amason's and Burrows's respective parcels[3] were originally part of a larger tract of land that was partitioned by court-appointed commissioners in April 1905. In his affidavit, Jeffrey Wood, a registered professional land surveyor, stated that his review of a map of the west half of Bowie County, last copyrighted in 1952 (the 1952 map),[4] showed a secondary road running north and south into the Burrows property. He also testified that this secondary road was referred to as an access road in the 1994 deed by which Amason acquired ownership of his property. Wood stated his understanding that the secondary road had been in existence from the time of the 1952 map until 2017.

Donald Ray Edson, by deposition, testified that he had worked in Bowie County for over thirty years for the Texas Forest Service. He looked at the Burrows property for Burrows's father, Hiram Burrows, to write a management plan, and also met Hiram at the property on occasions before and after trees were planted. He said he accessed the property by a county road, which he thought was "CR 3002." When he first accessed the property, there was no locked gate, but,

---

[3]Burrows also produced copies of deeds tracing the title of the Burrows property from the partition to her parents and an affidavit of heirship evidencing the death of her father and indicating that her mother was his sole heir.

[4]A partial copy of this map is also contained in the summary judgment record. Also, an undated aerial photograph of the Burrows property and Amason's property appears to show an unimproved road on the west side of Amason's property that leads to the Burrows property.

sometime before he retired in 2012, there was a locked gate. On that occasion, he crossed over the fence and walked to the Burrows property, without asking permission. He described CR 3002 as paved at the beginning, then just dirt. He recalled the Burrowses cutting and clearing their property in the 1980's and then replanting it. He also recalled driving his truck to the Burrows property on the same road and thought that the equipment needed to harvest the trees would have used that same road. He never asked permission to use the road. He also testified that, if Burrows could not use the road, she would not have access to the Burrows property.

Grady Epperson also testified by deposition. He stated that he had cut timber on the Burrows property two times. He accessed the property on a lane that turned off of the county road and led to the property. As far as he knew, the lane was a public road, and he did not recall asking permission to use it. He also testified that several people who worked for the Duffers[5] would use the lane to access their property. He thought that the "access road" and "public road" referenced in an unidentified deed was the road running up the west boundary of Amason's property. He thought he would have used the lane going to the Burrows property for a total of fifteen to twenty days while cutting timber. The second time he cut timber was in 2006 or 2007, at which time there was a gate on the Road. He went through the gate and did not recall asking permission.[6] He also testified that the 1952 map shows that there was an access road across Amason's property.

---

[5]The Duffer Family Partnership, Ltd., owned a tract of land lying between Amason's property and the Burrows property.

[6]The evidence in support of Amason's response to the motion for partial summary judgment showed that Amason granted Epperson a temporary easement to use the Road for the purpose of harvesting timber from the Burrows property, which expired on October 31, 2006.

In his deposition, Amason testified that he had met Burrows's parents a couple of times when they parked in his yard and walked down the lane to their property. He testified that what is now designated as CR 3002 has never been dedicated, that it runs across his land, and that he pays taxes on it. Bowie County paved CR 3002 between 2005 and 2008. He did not see a public access to the Burrows property on an unidentified Google map. He said he placed a lock on the gate across the Road in 2005, but let Epperson through the gate to cut timber.

Burrows, by deposition, testified that she and her father used the Road to access their property beginning in the 1970s and that Hiram would have been using it since the 1950s. She stated that the Burrows property has always been used to grow pine trees. She maintained that, in February 2018, she accessed the Burrows property by climbing the gate across the Road, but also that the Road was a part of CR 3002. She also said that she accessed the Burrows property between four and six times in the 1990s. She assumed that each time she accessed the Burrows property that the Road was a part of CR 3002. CR 3002 was dirt and gravel until sometime in the 2000s.

In support of his response to the motion for partial summary judgment, Amason filed his affidavit stating that he purchased his property in 1994 and had leased it for about fifteen years before that. He has lived in the immediate area his entire life. Amason stated that the road that is now known as CR 3002 begins as Farm to Market road (FM) 992 and ends at the concrete driveway to his residence. Before 9-1-1, there was no county road sign on that road. CR 3002 was paved by the county between 2006 and 2008 at his request. He describes the Road as a one-lane dirt and gravel road that intersects CR 3002 at a ninety-degree angle shortly before CR 3002 reaches the driveway to his residence. Amason averred that, while he was leasing the property, the Road was

5

overgrown and washed out and traversable only with a tractor or heavy-duty vehicle. After he purchased the property, he graded the Road, installed culverts and drainage, and maintained the Road.

Amason averred that he sold a tract of land between Amason's property and the Burrows property to Chad Duffer in 2017. The Duffer tract also needed access via the Road. Duffer and his lessees used the Road (to which he did not object) until Duffer built a road to State Highway 8. Amason stated that he used the Road to access his property, that the County has never maintained the Road, and that it has never been part of a postal or school bus route. He had never seen Burrows around his property until this lawsuit. He had seen her father one or two times when her father parked off CR 3002 and walked to the Burrows property. The only other person he saw associated with the Burrowses was Epperson, who approached him in 2005 or 2006 to cut timber on the Burrows property. He allowed Epperson access over the Road after granting him a written temporary easement that expired on October 31, 2006.

Amason also averred that there are no public roads that presently access the Burrows property, but that there was an old public road that ran north to the property and on the west side of his parents' home. That road had become overgrown over the years. Amason stated that, when he was a child, he walked and rode motorcycles down the other, now-overgrown road and across an old wooden bridge to the Burrows property.

Amason also offered the affidavit of Kenneth Lynch, a registered professional land surveyor. Lynch averred that, based on his review of various deeds and maps concerning the subject properties, he determined that in 1961 the prior owners of Amason's property had given

6

an easement over the Road to the prior owners of some property now owned by Duffer that lies north of Amason's property. He found no comparable easement granted to the Burrowses. Lynch also averred that, although he had found references to a public road to the south, which he identified as CR 3002, he did not find any reference to a public or county road that traversed Amason's property in a northerly direction from CR 3002. He also found a reference in a deed that referred to a public road along properties west of Amason's property that could have provided access to the Burrows property. He identified that road as extending from FM 992 along the west side of Amason's parents' home toward an overgrown roadbed. In his opinion, that was the same public road referenced in the mentioned deed.[7]

A traditional motion for summary judgment may be granted only if the movant establishes that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009); *Rhine v. Priority One Ins. Co.*, 411 S.W.3d 651, 657 (Tex. App.—Texarkana 2013, no pet.). We review the grant of a motion for summary judgment de novo "to determine whether a party's right to prevail is established as a matter of law." *Lamar Corp. v. City of Longview*, 270 S.W.3d 609, 613 (Tex. App.—Texarkana 2008, no pet.); *see Nash v. Beckett*, 365 S.W.3d 131, 136 (Tex. App.—Texarkana 2012, pet. denied) (citing *Mann*, 289 S.W.3d at 848). On appeal, the burden remains with the movant to show that there is no material fact issue and that the movant is entitled to judgment as a matter of law. *Limestone Prods. Distrib., Inc. v. McNamara*, 71 S.W.3d 308, 311 (Tex. 2002) (per curiam); *Rhone-Poulenc, Inc. v. Steel*, 997 S.W.2d 217, 223 (Tex. 1999). If the

---

[7]Copies of the deeds reviewed by Lynch were attached to his affidavit.

movant produces evidence entitling it to summary judgment, the burden shifts to the nonmovant to present evidence raising a genuine issue of material fact. *Walker v. Harris*, 924 S.W.2d 375, 377 (Tex. 1996). In our review of the grant of a traditional summary judgment, we take as true all evidence favorable to the nonmovant and indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *McNamara*, 71 S.W.3d at 311; *Steel*, 997 S.W.2d at 223; *Rhine*, 411 S.W.3d at 657.

A road may become a public road either (1) by act of the commissioners' court establishing it as public, (2) by prescription, or (3) by dedication. *See Worthington v. Wade*, 17 S.W. 520, 521 (Tex. 1891); *Rogers v. Stover*, No. 06-07-00053-CV, 2008 WL 191164, at *2 (Tex. App.—Texarkana Jan. 18, 2008, no pet.) (mem. op.); *Machala v. Weems*, 56 S.W.3d 748, 757–59 (Tex. App.—Texarkana 2001, no pet.). In this case, there was no evidence that the Road had been established as a public road by the commissioners' court or that it had become a public road by prescription.[8] The other basis for her partial summary judgment asserted by Burrows was implied dedication.

To show that a road has been impliedly dedicated to public use by a landowner, the proponent must establish that: "(1) the landowner's actions allow the belief that he or she intended to dedicate the road to public use, (2) he or she was competent to dedicate the road, (3) the public relied on the owner's acts and will benefit from the dedication, and (4) the offer of dedication was accepted." *Rogers*, 2008 WL 191164, at *2 (citing *Lindner v. Hill*, 691 S.W.2d 590, 592 (Tex.

---

[8]"The use of lands of another by the public as a roadway, with the acquiescence of the landowner, will not ripen into a prescriptive right, no matter what period of time such use may continue, unless the evidence shows, circumstantially or otherwise, that the use was by claim of right adverse to the landowner, of which adverse claim the latter has notice." *Schultz v. Shatto*, 237 S.W.2d 609, 614 (Tex. 1951).

1985) (citing *Las Vegas Pecan & Cattle Co. v. Zavala Cty.*, 682 S.W.2d 254, 256 (Tex. 1984)). Whether there has been an implied dedication is generally a question of fact. *Id*. (citing *Lindner*, 691 S.W.2d at 591). Further, "[b]ecause an implied dedication results in the appropriation of private property for public use without any compensation to the landowner, [Burrows] bore a heavy burden to establish an implied dedication." *See Mitchell v. Ballard*, 420 S.W.3d 122, 126 (Tex. App.—Texarkana 2012, no pet.) (quoting *Callaghan Ranch, Ltd. v. Killam*, No. 04-10-00802-CV, 2012 WL 394594, at *3 (Tex. App.—San Antonio Feb. 8, 2012, pet. denied) (mem. op.)).

When the origin of the road occurs in the distant past, there may be no proof available of the then-owner's intent. Consequently, a presumption that the road has been dedicated to public use may be established when (1) the origin of the road is shrouded in obscurity (i.e., when the origin of the road cannot be determined) and (2) there is long and continuous public use. *Rogers*, 2008 WL 191164, at *3 (citing *O'Connor v. Gragg*, 339 S.W.2d 878, 882 (Tex. 1960)); *Betts v. Reed*, 165 S.W.3d 862, 868 (Tex. App.—Texarkana 2005, no pet.). In such a case, "evidence of actual use, the purpose of the use, permission for the use, the nature of the road itself, and maintenance of the road by the government or by neighbors can all become important in our review." *Rogers*, 2008 WL 191164, at *2. As we noted in *Rogers*, although not dispositive, courts that have found an implied dedication have considered evidence of county maintenance of the road and use of the road for school bus travel or mail delivery. *Id*. at *5 (citing *Lindner*, 691 S.W.2d at 591–92; *Las Vegas Pecan & Cattle Co.*, 682 S.W.2d at 257). Further, courts have "looked to the scope of the public use, such as by tourists, fishermen, or fish camp renters, or examined whether

9

the road use was essential in some way." *Id*. (citing *Gutierrez v. Cty. of Zapata*, 951 S.W.2d 831, 838 (Tex. App.—San Antonio 1997, no writ)).

When Burrows's summary judgment evidence is viewed under the appropriate standard, that evidence shows that a secondary road existed as early as 1952 in the approximate location of the Road. No one had any knowledge of when the Road actually came into existence.[9] Therefore, its origin is shrouded in obscurity.

However, Burrows's summary judgment proof does not conclusively establish long and continuous public use. Burrows's proof suggests that she and her father used the Road on around ten occasions over a period of almost fifty years. Evidence also suggests that Edson and Epperson used the Road a few times in the last thirty years, but their use appeared to be in the service of either Burrows or her father, not as members of the general public. Although Epperson testified that workers for Duffer also used the road several times, those uses also seemed to be in service of an owner of property that the Road traversed. Burrows's expert, Wood, characterized the Road only as an access road. Although there was evidence that the County had paved CR 3002, there was no summary-judgment evidence suggesting that the County had ever performed any maintenance on the Road. Finally, there was no summary-judgment proof of any general and customary use of the Road by the general public.

---

[9]In her brief, Burrows argues that, since not having public access to the tract of land that eventually became the Burrows property would substantially impair its value, reasonable people could not differ in the conclusion that the Road was in existence at the time of the 1905 partition by the commissioners. We disagree. First, Burrows has cited no case that holds that, in a partition, all tracts must have a *public* access. Lack of public access would not have necessarily impaired its value substantially if the owner had an easement to the property. In addition, even if we were to infer that the owner of the Burrows property in 1905 must have had a right of access, this neither leads to the conclusion that the access must have been public, nor to the conclusion that the access in 1905 must have been where the Road is located today.

This summary-judgment proof does not conclusively establish long and continuous use of the Road by the public. Consequently, the summary judgment that the Road was a public road was improper. *See Rogers*, 2008 WL 191164, at *6. We sustain this issue.

*(2)* *The Award of Damages, Attorney Fees, and Costs Predicated on the Summary Judgment Must Be Reversed*

In addition, the award of damages was based on the summary judgment and findings that Amason constructed a barrier across the public road and denied access to the Burrows property for cutting timber and replanting. Attorney fees and costs were awarded to Burrows based, in part, on a finding that she was the prevailing party. Because we find that the summary-judgment determination that the Road was a public road was error, we find that the award of damages, attorney fees, and costs was error, based on the erroneous public road determination. Therefore, we sustain Amason's issues complaining of the award of damages, attorney fees, and costs.[10]

For the reasons stated above, we reverse the summary judgment and remand this cause to the trial court for further proceedings.

Josh R. Morriss III
Chief Justice

Date Submitted: December 9, 2019
Date Decided: January 6, 2020

---

[10]Since we reverse the award of damages, we do not address Amason's complaint regarding the admission of the testimony of Burrows's damages expert.

11