

## OPINION

No. 04-08-00443-CV

Daniel M. **VAN DAM** and Cheryl L. Van Dam,
Appellants

v.

Patrick L. **LEWIS** and Dorisa L. Lewis,
Appellees

From the 79th Judicial District Court, Jim Wells County, Texas
Trial Court No. 06-08-44829-CV
Honorable Richard C. Terrell, Judge Presiding

Opinion by:    Rebecca Simmons, Justice

Sitting:    Catherine Stone, Chief Justice
        Karen Angelini, Justice
        Rebecca Simmons, Justice

Delivered and Filed:  November 4, 2009

REVERSED AND RENDERED

        This appeal stems from a dispute over a piece of property providing water access to Lake

Corpus Christi for Pernitas Point Subdivision residents Appellees Patrick L. Lewis and Dorissa

Lewis.  The Lewises claim an easement exists across a portion of land owned by Appellants

Daniel Van Dam and Cheryl L. Van Dam, which provides the Lewises, and other individuals,

access to Lake Corpus Christi.  The trial court granted a declaratory judgment, in favor of the

Lewises, confirming an easement by implied dedication "for the benefit of the public,

specifically Plaintiffs and all other lot owners within the Pernitas Point Subdivision." The trial court also denied the declaratory judgment sought by the Van Dams as fee simple owners. We reverse the trial court's judgment and render judgment that the property in question is not subject to an easement by implied dedication.

## BACKGROUND

The Pernitas Point subdivision is a platted subdivision created in the late 1950's. The original subdivision includes numbered lots and undivided areas designated as "Undivided Q" on the subdivision plat. Over the years, portions of the Q areas were sold to individuals holding lots adjacent to the Q areas including one of the Van Dams' predecessors in title.

In 2002, the Van Dams purchased several lots that included a portion of the Q land adjacent to their lots. The record reflects that the Van Dams, and their predecessors, paid property taxes on Lots 1-4 and the adjacent Q-2 property. The disputed easement in question takes the form of a path or overgrown road over that portion of the Van Dams' property formerly designated as Undivided Q-2.[1] The Lewises purchased their property, lots 26, 27, and 28, in August of 2005. Their property is also adjacent and contiguous to the portion of the Van Dams' Q-2 property in question. Critically, the Q-2 property completely separates the Lewis property from the water. The Lewises argue there is an easement across the Van Dams' property granting them access to the lake. The Van Dams argue that their deed includes fee simple ownership of the Q-2 property unburdened by any easement.

From August of 2005 through early 2006, the Lewises accessed the lake through their back gate, crossing the Q-2 property, to enjoy the lake. In the spring of 2006, Daniel Van Dam notified Patrick Lewis that the Q-2 property was private property and the Lewises' use of Q-2

---

[1] For purposes of clarity, the portion of the Van Dam property over which an easement is claimed will be referenced as the Q-2 property.

was trespassing. The Van Dams subsequently installed a metal chain across their property with a sign that said "Private property, no trespassing." Additionally, the Van Dams began constructing a retaining wall and a boat ramp on the Q-2 property.

The record clearly establishes, and the parties do not dispute, that the Van Dams own the Q-2 property in question. The issue before this court is whether the evidence was legally sufficient to establish the existence of an easement by implied dedication across the Q-2 property.

### STANDARD OF REVIEW

An appellate court reviews declaratory judgments under the same standards as other judgments. TEX. CIV. PRAC. & REM. CODE ANN. § 37.010 (Vernon 2008); *Lidawi v. Progressive County Mut. Ins. Co.*, 112 S.W.3d 725, 730 (Tex. App.—Houston [14th Dist.] 2003, no pet.). As such, the procedure used to resolve the issue at trial determines the standard of review on appeal. *Lidawi*, 112 S.W.3d at 730. A trial court has no discretion when evaluating a question of law. *See Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992). When the trial court enters a declaratory judgment after a bench trial, an appellate court applies a sufficiency of the evidence review to the trial court's factual findings and reviews its conclusions of law de novo. *See Black v. City of Killeen*, 78 S.W.3d 686, 691 (Tex. App.—Austin 2002, pet. denied). However, when the court does not enter findings of fact or conclusions of law to support its ruling, all facts necessary to support the judgment are implied. *Sixth RMA Partners, L.P. v. Sibley*, 111 S.W.3d 46, 52 (Tex. 2003); *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 795 (Tex. 2002). To analyze the legal sufficiency of the evidence supporting a finding, we review the record in the light most favorable to the trial court's findings and indulge every reasonable inference that would support it. *See City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005). Additionally,

we credit favorable evidence if a reasonable fact-finder could and disregard contrary evidence unless a reasonable fact-finder could not. *Id.* at 827; *accord Ingram v. Deere*, No. 06-0815, 2009 WL 1900537, *3 (Tex. Jul 03, 2009).

### EASEMENT BY IMPLIED DEDICATION

The trial court's judgment specifically declares that an easement by implied dedication burdens the Van Dams' Q-2 property. The Van Dams argue that the evidence is legally insufficient to support an easement by implied dedication. "Dedication" is the "appropriation of land, or an easement therein, by the owner, for the use of the public." BLACK'S LAW DICTIONARY 371 (5th ed. 1979). Once dedicated, a landowner "reserves no rights that are incompatible with the full enjoyment of the public." *Scott v. Cannon*, 959 S.W.2d 712, 718 (Tex. App.—Austin 1998, pet denied). Whether property has been dedicated to public use is generally a question of fact. *Broussard v. Jablecki*, 792 S.W.2d 535, 537 (Tex. App.—Houston [1st Dist.] 1990, no writ). An implied dedication requires both a clear and unequivocal intention on the part of the landowner to appropriate the land to public use and an acceptance by the public. *Gutierrez v. County of Zapata*, 951 S.W.2d 831, 838 (Tex. App.—San Antonio 1997, no writ).

### A. Required Elements of Easement by Implied Dedication

In Texas, the elements of an implied dedication are well established:

(1)     the landowner induced the belief that the landowner intended to dedicate the [property] to public use;
(2)     the landowner was competent to do so;
(3)     the public relied on the landowner's actions and will be served by the dedication; and
(4)     there was an offer and acceptance.

*Las Vegas Pecan & Cattle Co. v. Zavala County*, 682 S.W.2d 254, 256 (Tex. 1984); *Stein v. Killough*, 53 S.W.3d 36, 42-43 n.2 (Tex. App.—San Antonio 2001, no pet.). Because an implied

dedication results in "the appropriation of private property for public use without any compensation to the landowner," the Lewises bore a heavy burden to establish each element of the implied dedication. *County of Real v. Hafley*, 873 S.W.2d 725, 728 (Tex. App.—San Antonio 1994, writ denied).

## B. Donative Intent

Based on the facts of this case, both parties agree that some evidence of the donative intent of the original Q-2 landowners, the developers of Pernitas Point, had to be introduced at trial. We, therefore, look to the Lewises' evidence establishing the landowners' donative intent. *See Greenway Parks Home Owners Ass'n v. City of Dallas*, 312 S.W.2d 235, 241 (1958). We note "[t]he intention to dedicate must be shown by something more than an omission or failure to act or acquiesce on the part of the owner." *Id.*

### 1. The Developers' Original Subdivision of Property

The Van Dams argue that the original division and platting of Pernitas Point negate any donative intent of the owner. The Van Dams assert that the Pernitas Development Company specifically provided that all streets or roadways "within the subdivision were dedicated to the public use forever." The subdivision plat includes numerous streets and roadways platted and dedicated for public use. Additionally, the Van Dams' deed specifically provides for easements for the benefit of the utilities and telephone company. Accordingly, the Van Dams argue the Pernitas Development Company was familiar with "the proper method and language for making a public dedication of land," and did not create an easement within the undivided Q properties. Although the Van Dams' evidence clearly establishes there is no explicit easement across the Q-2 property, it does not foreclose the trial court's finding of an easement by implied dedication.

*2. Advertisement Brochure*

To establish the donative intent of the developers, the Lewises primarily rely on a brochure distributed in the early days of the subdivision as some evidence the developers donated an easement over the Q-2 property. Jerry Hendrick, ex-mayor and city council member, provided the trial court with a promotional brochure including a map used by the real estate agents when the Pernitas Point lots were being divided and sold. The map identifies a three-hundred-foot piece of property with an arrow referencing the undivided Q property as "owner access." Importantly, however, the brochure in question is undated, its author is unknown, and the meaning of the reference to "owner access" is unclear. There is no evidence linking the brochure to the original developers. In addition to its unknown provenance, the phrase "owner access" does not support the dedication of the Q-2 property to the general public, a requirement of an implied dedication discussed further below.

*3. Public Use*

a. Acquiescence by Pernitas Point Developers and Landowners

As additional evidence of donative intent, the Lewises point to the testimony of neighbors who accessed the lake through the Q-2 property. Several neighbors testified that, for over three decades, multiple Pernitas Point landowners have used the portion of the Q-2 property in question to access the lake. Additionally, neighbors and long-time Pernitas Point residents Margaret Victor and Nancy Vial, testified that the Pernitas Point residents openly and continuously used the Q-2 property as their primary access to Lake Corpus Christi for over twenty years. Victor explained that she was provided with a promotional brochure very similar to the one provided to Hendrick that identified the Q-2 property as owner access. Vial further

testified that the previous landowner assured her that the Q-2 property was designated to provide public access to Lake Corpus Christi.

However, determining that a dedication was intended requires more than simply failing to act or acquiescence in the use of land, although direct evidence of an overt act or a declaration is not required. *Baker v. Peace*, 172 S.W.3d 82, 88 (Tex. App.—El Paso 2005, pet. denied); *see also Betts v. Reed*, 165 S.W.3d 862, 868 (Tex. App.—Texarkana 2005, no pet.) ("There must be some evidence in addition to the owner's acquiescence that implies a donative intent."). Consequently, in the present case, mere acquiescence and use by the neighbors, without some additional factor from which the donative intent can be inferred, does not establish an easement by implied dedication. *Id.*; *see also Greenway Parks Home Owners Ass'n*, 312 S.W.2d at 241.

### b. Use by County Officials

The Lewises also refer to the creation and use of a road over the Q-2 property to establish donative intent. Hendrick testified that, based on his personal knowledge, a road through the Q-2 property to Lake Corpus Christi had been paved for over thirty-five years, although currently in disrepair, and that both Jim Wells and Live Oak County previously maintained the roadway for the county fire trucks. Michael Frederick, an elected alderman and current mayor pro-tem, testified that he had searched the courthouse records for any reference to an easement on the Q-2 property and had failed to find any such documents. Additionally, he testified that the county does not currently maintain any roadway across the Q-2 property. The record reflects the road is in complete disrepair and overgrown and the counties have not used the road for water access for many years. *See Gutierrez*, 951 S.W.2d at 841 (identifying public use as "oil field and ranch workers, fishermen, tourists, sightseers, other strangers, [] patrons, visitors, school buses, public utilities, the fire department, the sheriff's department, and the highway department."). "The

requisite intention on the owner's part may be inferred when there is evidence of some additional factor that implies a donative intention when considered in light of the owner's acquiescence in the public's use of the roadway." *Barstow v. State*, 742 S.W.2d 495, 504-06 (Tex. App.—Austin 1987, writ denied). This additional evidence may include an owner's acceptance of "the expenditure of public funds by public authorities to adapt, improve, or maintain the roadway for use by the public." *Id.* at 506; *see also Greenway Parks*, 312 S.W.2d at 241. There simply is no evidence in the record that the road was created for use by the public or maintained for use by the public.

### c. Use by Public at Large

The Van Dams next assert that even if the evidence establishes some intent that Pernitas Point neighbors could traverse the Q-2 property, the use of the Q-2 property by a limited class of persons is not sufficient to constitute an implied dedication of the Q-2 property for public use. More specifically, the Van Dams argue the Lewises failed to prove the road was "free and open to all who have occasion to use it." *Gutierrez*, 951 S.W.2d at 841. We agree. Although the parties agree the easement must be for the public at large, and not limited to the landowners of Pernitas Point, there was no testimony that the public at large used the Q-2 property to access Lake Corpus Christi. In fact, the brochure relied upon by the Lewises referenced the Q-2 property as "owner access" which conflicts with the idea of a dedication to the general public. Other evidence presented by the Lewises was in accord that the use of the Q-2 property was for ingress and egress by a limited number of individuals of Pernitas Point, rather than the general public. The evidence was that only subdivision residents and guests were anticipated users of the Q-2 property and there was no evidence of the original owners' intent to dedicate the use of the Q-2 property to the general public.

### 4. Sale and Transfer of the Q-2 Property

None of the testifying landowners purchased their property from the Pernitas Development Company and the county deed records relating back over thirty years, for both the Van Dam property and the Pernitas Point subdivision, fail to reference any easement with regard to the Q-2 property in question. In 1971, Norman and Catherine Pinson sold lots 1-7 (a portion of which was later purchased by the Van Dams) to Bruce Ivey and Joe Pritchett. The same warranty deed also includes a portion of the previously "undivided Block Q2 . . . which tract of land is adjacent to . . . lots 1-7." The original owners knew how to grant an easement as evidenced by the plat of Pernitas Point. The apparent lack of intent to donate an easement to the public over the Q-2 property appears particularly evident given the subsequent partition and sale in 1971 of the original undivided Q property unburdened by an express easement.

Based on the record before us, we conclude there is legally insufficient evidence of donative intent by the original owners and developers of Pernitas Point to burden the Q-2 property with an easement.[2]

CONCLUSION

The Lewises failed to meet the heavy burden of proof required for donative intent by the original landowners. There is testimony that specific individuals used the property, and that the county previously used the access road for county fire trucks, but the record does not substantiate any intent by the original landowners to dedicate the property in question to the public at large. At best, there is evidence that previous owners of the disputed property acquiesced in their neighbors' use of their property. Importantly, however, acquiescence is not sufficient. *See*

---

[2] In Appellants' final issue on appeal, they argue that to the extent the trial court's judgment could have been based on the legal theory of easement by prescription, the evidence is legally insufficient to support the judgment. The judgment, however, specifically provides that the "easement was an implied dedication for the use of the public for access to Lake Corpus Christi." We, therefore, need not address this argument. *See* TEX. R. APP. P. 47.1 (requiring concise opinions addressing only those issues "necessary to final disposition of the appeal").

*Greenway Parks*, 312 S.W.2d at 241. Thus, the Lewises' evidence was legally insufficient to prove implied dedication. *See County of Real*, 873 S.W.2d at 728 (reiterating heavy burden of proof for implied dedication). Accordingly, because the evidence fails to establish, as a matter of law, each of the required elements of easement by implied dedication, the trial court erred in granting an easement by implied dedication for the benefit of the public, including the Lewises and all other landowners within the Pernitas Point subdivision. We, therefore, reverse the trial court's judgment and render judgment that the property in question is not subject to an easement for the benefit of the public.

Rebecca Simmons, Justice