

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

## No. 06-12-00012-CV
_____


LAFRAY MITCHELL AND WIFE, MARY DEE MITCHELL, Appellants

V.

ROBERT L. BALLARD AND WIFE, LOYCE J. BALLARD, Appellees


On Appeal from the 62nd Judicial District Court
Lamar County, Texas
Trial Court No. 79083


Before Morriss, C.J., Carter and Moseley, JJ.
Opinion by Justice Carter

LaFray Mitchell and his wife, Mary Dee Mitchell, erected gateways[1] on "Lamar County Road Number 15950" (Road) which was used by Robert L. Ballard and his wife, Loyce J. Ballard, to access their property. The Ballards sued to have the Road declared a public road after "repeated demands that the gate be removed" proved unfruitful. A jury trial resulted in findings favorable to the Ballards, an award of attorney's fees and costs in the amount of $10,446.63, and a judgment declaring the Road "a county road of Lamar County, beginning at its present point of origin at the Texas State Highway 19/24 and continuing east to the Robertson Creek at its point of termination." The Mitchells appeal the judgment, arguing that (1) "there is neither legally nor factually sufficient evidence to support a decision that the disputed portion of the road was impliedly dedicated to Lamar County prior to August 31, 1981"; (2) Lamar County abandoned the road "past the Mitchells' first gate, which was fenced continuously for at least 25 years before the Ballards bought their property in 1995";[2] and (3) the award of attorney's fees should be reversed. Finding the evidence insufficient to support a finding of implied dedication, we reverse the judgment of the trial court and remand the matter for further disposition.

## I.     Standard of Review

In reviewing legal sufficiency, we analyze "whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review." *Martin v. Martin*, 363

---

[1]At trial, it was established that the gate from the first gateway was "taken off . . . at the hinges and moved to" the second gate. Thus, it appears that the first gateway was a decorative gateway incapable of being closed at the time of trial.

[2]Due to our disposition on the issue of implied dedication, we need not address sufficiency of the evidence supporting the finding on abandonment.

S.W.3d 221, 235 (Tex. App.—Texarkana 2012, no pet.) (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005)). Because the Mitchells did not have the burden of proof on the implied dedication issue, they must demonstrate that no evidence supports the adverse finding on implied dedication. *Croucher v. Croucher*, 660 S.W.2d 55, 58 (Tex. 1983); *Monasco v. Gilmer Boating & Fishing Club*, 339 S.W.3d 828, 830 (Tex. App.—Texarkana 2011, no pet.). A legal sufficiency challenge will be sustained only when the record discloses (1) a complete absence of evidence of a vital fact, (2) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a mere scintilla of evidence, or (4) the evidence established conclusively the opposite of a vital fact. *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003); *Monasco*, 339 S.W.3d at 830.

More than a scintilla of evidence exists when the evidence "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 601 (Tex. 2004) (quoting *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997)). Evidence that is so weak as to do no more than to create a mere surmise or suspicion is no more than a scintilla and is therefore no evidence. *Id.*; *Serv. Corp. Int'l v. Guerra*, 348 S.W.3d 221, 228 (Tex. 2011).

In reviewing the legal sufficiency of the evidence, we are to consider all of the evidence in the light most favorable to the verdict, indulging every reasonable inference that would support it. *See Wilson*, 168 S.W.3d at 822. We "cannot substitute [our] judgment for that of the trier-of-fact, so long as the evidence falls within this zone of reasonable disagreement," but when

3

the evidence allows only one inference, "neither jurors nor the reviewing court may disregard it." *Id*.

The Mitchells also challenge the factual sufficiency of the evidence supporting the adverse finding, and must demonstrate that it is against the great weight and preponderance of the evidence. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001); *Martin*, 363 S.W.3d at 263; *McClung v. Ayers*, 352 S.W.3d 723, 727 (Tex. App.—Texarkana 2001, no pet.); *Monasco*, 339 S.W.3d at 830. In our review of factual sufficiency, we consider all the evidence supporting and contradicting the finding. *Martin*, 363 S.W.3d at 236; *Plas–Tex, Inc. v. U.S. Steel Corp.*, 772 S.W.2d 442, 445 (Tex. 1989). The evidence is sufficient to support the adverse finding if the evidence is such that reasonable minds could differ on the meaning of the evidence, or the inferences and conclusions to be drawn therefrom. *Cendant Mobility Servs. Corp. v. Falconer*, 135 S.W.3d 349, 352 (Tex. App.—Texarkana 2004, no pet.). Conversely, a factual sufficiency challenge will be sustained if the evidence is so weak or the verdict is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986); *Martin*, 363 S.W.3d at 236.

## II. The Finding of Implied Dedication Was Not Supported by Sufficient Evidence

### A. Requirements of Implied Dedication

The elements of an implied dedication are "(1) the acts of the landowner induced the belief that the landowner intended to dedicate the road to public use; (2) [the landowner] was

4

competent to do so;[3] (3) the public relied on these acts and will be served by the dedication; and (4) there was an offer and acceptance of the dedication." *Reed v. Wright*, 155 S.W.3d 666, 671 n.6 (Tex. App.—Texarkana 2005, pet. denied) (citing *Lindner v. Hill*, 691 S.W.2d 590, 592 (Tex. 1985); *Las Vegas Pecan & Cattle Co. v. Zavala Cnty.*, 682 S.W.2d 254, 256 (Tex. 1984); *Machala v. Weems*, 56 S.W.3d 748, 760 (Tex. App.—Texarkana 2001, no pet.); *Stein v. Killough*, 53 S.W.3d 36, 42 (Tex. App.—San Antonio 2001, no pet.)); *Callaghan Ranch, Ltd. v. Killam*, No. 04-10-00802-CV, 2012 WL 394594, at *3 (Tex. App.—San Antonio Feb. 8, 2012, pet. denied) (mem. op.). "Because an implied dedication results in the appropriation of private property for public use without any compensation to the landowner, [the Ballards] bore a heavy burden to establish an implied dedication." *Killam*, 2012 WL 394594, at *3 (citing *Van Dam v. Lewis*, 307 S.W.3d 336, 340 (Tex. App.—San Antonio 2009, no pet.); *see Pinebrook Props., Ltd. v. Brookhaven Lake Prop. Owners Ass'n*, 77 S.W.3d 487, 503 (Tex. App.—Texarkana 2002, pet. denied).

"When evaluating the sufficiency of the evidence, we measure the sufficiency of the evidence by the court's charge." *Martin*, 363 S.W.3d at 236. With the standards in mind, we evaluate the evidence presented in support of the jury's affirmative answer to question one, which asked, "Was the road past the Defendants' first (1st) gate impliedly dedicated as a public road prior to August 31, 1981 by the Defendants, LaFray Mitchell and Mary Dee Mitchell, or their predecessors in title?"

---

[3]This element is not challenged.

### B.     The Evidence

As seen from the drawing below, this case concerns the Road that begins at State Highway 19/24, passes the Ballards' property, extends across several tracts of the Mitchells' property, and ends in the Mitchells' property.



The dispute is not whether the Road is a county road. In fact, LaFray Mitchell testified that a Highway Department sign and a Lamar County road sign denote the Road as a county road at its beginning point. Instead, the dispute is how much of the Road is a public road.[4] The Mitchells believe that the Road stops being a public road 800 feet from the highway, the point where the

---

[4]Originally, it appears that the Mitchells contended that the entire road was a private road. At trial, LaFray explained the change in their position that only 800 feet of the road was public occurred "because there's some houses down it that far" and homeowners use the road to enter their property.

Mitchells recently placed a decorative gateway several years ago.[5] This gate is situated close to grain silos owned by the Mitchells.

When LaFray's parents purchased the property in the mid 1940s, "90 percent of the place was in timber." There was "[v]ery little" roadway on the property, and no houses along the Road.[6] In 1962 or 1963, LaFray built the Road from the highway to the creek with his father. Over the years, people used the road to fish and hunt, but LaFray testified that "[n]inety percent of the people that went down there most of the time asked permission to go," and LaFray's son, Berk, stated people "[a]lways" asked permission to use the Road. Six gates were placed along and across the road, beginning at the 800-foot mark, which remained closed "[p]retty much all the time." Still, some people would trespass, leave the gates open, and "trash up things." Robert Ballard admitted that the Mitchells have experienced many problems with trespassers and told the jury that he sympathized with them.

The Mitchells personally maintained the Road from the 800-foot mark to the creek. In 1991, Carl Steffy became the Lamar County Commissioner. He wrote the following letter, which was admitted into evidence for the jury's consideration:

> CR 15950 is just what it's [sic] number implies: ***A LAMAR COUNTY OWNED AND MAINTAINED ROAD!*** For 16 years I was responsible for the upkeep and maintenance of the roads in Prtc. 2. CR 15950 was one of these. No landowner should be prohibited from accessing their land using the county roads provided for and maintained with tax dollars. Mr. La Fray [sic] Mitchell contacted me the first months I was in office requesting this road be maintained. . . . Over the years, Mr. Mitchell contacted me several times when the road was in need of blade work. We also replaced culverts on the land entrances to his places. . . .

---

[5]The parties referred to this gateway as the first gate.

[6]Around 1956, a few houses were built in the area close to the highway.

> We maintained the road to the big tree about two-thirds the way between the dairy barn and Robertson Creek. This allowed everyone access to their property and conserved tax dollars. I will be glad to testify in any court to the fact that this road should remain open and was maintained by my staff for the 16 years I was commissioner and by previous commissioners.

Besides referencing that they only maintained the Road "to the big tree about two-thirds the way between the dairy barn and Robertson Creek," Steffy did not testify how many feet of the Road was maintained by the county. He did state that he replaced culverts by the silos, where the first gate was located. Rodney Clements, an employee of Lamar County for over thirty years, testified that he was instructed by Steffy to install culverts along the Road. He stated that he had not maintained the Road prior to that date.

LaFray believed the work by Steffy was done as a favor to the Ballards' predecessor in interest. He testified there was no traffic on the Road. LaFray clarified that he did not ask Steffy to conduct any maintenance beyond the location of the first gate. He admitted that another commissioner had worked on the road up to the silos, but there is no clarification as to the date the work was done.

Berk also testified that the county did not maintain the Road past the first gate. However, he stated that he witnessed Steffy doing some work past the first gate on one occasion in order to drain water on the property. Berk claimed that he reminded Steffy that the Road was a private Road past the first gate. He testified that his father "had knee surgery, and there were three or four gates on the road, and we were having to stop and open and close those things while we were shuttling feed in and out . . . . [a]nd I made the decision to . . . eliminate the gates so he wouldn't have to get on and off the tractor." Berk believed that the gates were removed "around

8

'95–'94" and that there were no gates on the Road for "five or six years."  LaFray testified the gates were removed when the Mitchells began "going up and down them so much," and at some point, there were no gates on the Road for a period of ten or fifteen years.[7]

The Ballards purchased their property in 1995, and their deed called for their southern boundary to be a county road.  They were surprised when the Mitchells placed the ornamental gate at the 800-foot mark in January 2009.  Robert testified that he wrote to Lonnie Layton, the current Lamar County Commissioner, to inquire about the placement of the gate.  After receiving no response, he "carried five or six different county maps to Mr. Layton and presented them to him.  Each time, each one that I would present to him, he would pitch aside and say, that's not what mine shows."  Mr. Ballard admitted that "[t]hey stopped maintenance at the 800 foot mark."  He clarified, "There is gravel from Highway 19 and 24 to the entrance to this gate.  From that point on, it's a dirt road."  Robert also stated he had a lock on the Mitchells' second gate, which is 1,200–1,400 feet from the first gate.  The Mitchells believed they had given several easements to nearby property owners to use the Road.

Layton testified in his capacity as the current county commissioner.  He told the jury that the Road is "a county road to a certain spot which is approximately 800 feet."  Layton stated that the county only maintained the Road up to the first gate and that there are no houses beyond the first gate.  He testified that those who worked for the county told him that culverts were installed past the 800-foot mark "whether it was proper or not."  He expressed his position that the county had no interest to maintain the Road past the first gate.

---

[7]It is not clear what years the gates were removed or whether this time frame refers to a continuous time period.

The Mitchells hired land title researcher David Moore. Moore testified that there were no easements evidencing a dedication of the Road; the minutes of the Lamar County Commissioner's Court failed to mention a dedication of the Road; certain maps failed to show the existence of County Road 15950; and that an access easement given to the United States government began "at the end of County Road 15950 and the west line of a 13 acre tract," which was consistent with the position that the county road terminated at approximately the 800-foot mark. However, Moore admitted that appraisal district maps showed the county road extending past the Ballards' property.

The Ballards hired Jim Nelson, a registered professional land surveyor, to investigate the Road and testify about his findings. Because there was no evidence of an express dedication of the Road, he was asked to examine evidence suggesting an implied dedication. He included a "USGS Map dated 1964." This map shows the existence of some road, considered in the category of "Medium duty" to "Unimproved dirt," that began at the highway and extended to the creek. However, the map did not label the road in any manner.[8] Also attached was "an enlarged copy of part of the Lamar County Road Maps," which acknowledged the existence of Lamar County Road 15950. Although Nelson stated the 1993 map did "not mention the length to width of the Road," the creek is depicted in the map, and it is clear that the road ends well before reaching the creek, as shown below.

---

[8]It is clear that the comments on the map labeling items such as "Ballard," "Lamar County Road 15590," and "End of Road," were later added because the road is misnumbered, and Ballard did not purchase his property until 1995. Similarly, Exhibit G to Nelson's report was created by him and consisted of "an Arial [sic] Photo" with markings.

10



Nelson also mentioned the 2004 Warranty Easement Deed from the Mitchells to the United States Government, which referenced "County Road No. 15950" in the field notes. Exhibit B to the deed stated that "[t]he easement area is adjacent to a public road, to-wit: County Road 15950, which will be used to access this easement area." The Ballards' deed, and the 1978 administrator's deed of their predecessors, made reference to a county road.

A 1978 boundary survey of the tract of the Ballards' predecessor and field notes made by W.R. Abbott were also attached. The notes contain a drawing made by Abbott, which contains the notation "County Road" along the southern border of the property. Nelson's report stated: "I worked for Abbott during this time. We never did a survey on a County Road if there was a gate across the Road. The gate would have to be totally removed if the survey was to be done. I don't remember any gate on this Road at the time of the survey." Nelson also believed there were no gates on the Road during a 1999 survey completed by him. Berk had testified the gates were removed for a period of five or six years in 1994 or 1995, and, without specifying the time

frame at issue, LaFray had testified that no gates were on the road for ten or fifteen years.[9] Berk also stated that the road had been gated at all times during the relevant time period.

### C.     Analysis

Under common law, a property owner could either expressly or impliedly make known his or her intention to dedicate property. *Betts v. Reed*, 165 S.W.3d 862, 868 (Tex. App.—Texarkana 2005, no pet.). The Texas Legislature has abolished the theory of implied dedication in counties with a population of 50,000 or less. TEX. TRANSP. CODE ANN. §§ 281.001, 281.003 (West 1999). We take judicial notice that Lamar County has a population of 49,793 according to the 2010 census.[10] However, Section 281.003 does not affect roads impliedly dedicated to public use before the effective date of the statute. *Betts*, 165 S.W.3d at 868 n.2; *Pinebrook Props., Ltd.*, 77 S.W.3d at 504; *see* Act of June 1, 1981, 67th Leg., R.S., ch. 613, 1981 Tex. Gen. Laws 2412–13, *amended by* Act of May 1, 1995, 74th Leg., R.S., ch. 165, § 1, 1995 Tex. Gen. Laws 1025, 1195–96. Thus, the Ballards were required to show that the Road was impliedly dedicated by the Mitchells as "a county road of Lamar County, beginning at its present point of origin at the Texas State Highway 19/24 and continuing east to the Robertson Creek at its point of termination" prior to August 31, 1981.

The first essential element of implied dedication requires a finding that "the acts of the landowner induced the belief that the landowner intended to dedicate the road to public use."

---

[9]Attorney Larry Powers testified the Road was a county road prior to 1981 in his opinion. Powers' opinion was based upon the 1964 map depicted above, establishing the Road terminated before the creek, a Texas Department of Transportation map of an unknown date which was not admitted as an exhibit, other maps, Nelson's report, and Nelson's survey. As outlined below, this evidence was insufficient to demonstrate donative intent.

[10]2010 United States Census, available at http://2010.census.gov/2010census/popmap/ipmtext.php?fl=48.

*Betts*, 165 S.W.3d at 868.[11]  "As a general rule, the manifestation of an intent to dedicate must be something more than an omission, failure to act, or acquiescence on the part of the owner."[12]  *Id.* (citing *Greenway Parks Home Owners Ass'n v. City of Dalla*s, 312 S.W.2d 235, 241 (1958); *Gutierrez*, 951 S.W.2d at 839).  "In order to constitute dedication by estoppel or implication there must exist a clear and unequivocal intention on the part of the landowner to dedicate the same to public use and an acceptance thereby by the public."  *Id.* (quoting *Greenway Parks Home Owners Ass'n*, 312 S.W.2d at 241).  There must be some evidence in addition to the owner's acquiescence that implies a donative intent, which can include permission "to public authorities to grade, repair, or otherwise improve the roadway" and "an express representation by the owner of a road to a land purchaser that the way is reserved for public use."  *Id.* (citing *Long Island Owner's Ass'n v. Davidson*, 965 S.W.2d 674, 681 (Tex. App.—Corpus Christi 1998, pet. denied)).  "In determining whether an implied dedication occurred, we look only at actions occurring prior to the statute's effective date."  *Basham v. Gardner*, No. 10-05-00398-CV, 2007 WL 2389990, at *2 (Tex. App.—Waco Aug. 22, 2007, no pet.) (mem. op.).

In this case, there is some evidence that Lamar County Commissioners who came before Steffy maintained the Road, but there is no evidence regarding how much of the Road was

---

[11]Although the Mitchells denied dedicating the Road past the first gate, direct evidence of a landowner's intent is not required.  *Id.* at 869 (citing *Supak v. Zboril*, 56 S.W.3d 785, 790 (Tex. App.—Houston [14th Dist.] 2001, no pet.)); *see Owens v. Hockett*, 251 S.W.2d 957, 958–59 (1952).

[12]"Dedication is presumed when the public engages in long and continuous use of a road whose origin is 'shrouded in obscurity.'"  *Reed*, 155 S.W.3d at 671–72.  Here, because the origin of the road is known, no such presumption applies in this case.  Further, "[s]ince by dedication, valuable rights in land pass from the owner, no presumption of an intent to dedicate arises, unless it is clearly shown by his acts and declarations or by a line of conduct, the only reasonable explanation of which is that a dedication was intended."  *Gutierrez v. County of Zapata*, 951 S.W.2d 831, 838 (Tex. App.—San Antonio 1997, no writ).

13

maintained by them, aside from Lamar County maintenance maps indicating that the county road only extended up to around the 800-foot mark. Although Steffy's actions in maintaining the Road were conducted past the relevant time frame in this case, it could provide some indication of whether the Road was impliedly dedicated before 1981 if there was evidence suggesting that similar maintenance was conducted prior to 1981. Here, no such evidence was presented. Steffy testified that LaFray contacted him requesting that the Road be maintained, that previous commissioners had maintained the Road, and that he installed culverts somewhat beyond the first gate. However, Steffy also stated, "We maintained the road to the big tree about two-thirds the way between the dairy barn and Robertson Creek." In other words, there is no evidence in the record that Lamar County maintained the Road past the first gate during the relevant time period, and evidence beyond the relevant time period established only that Lamar County maintained a portion of the Road. It is also undisputed that the Mitchells maintained the dirt portion of the Road with exception of the culverts installed by Steffy, as County Commissioner, after the relevant time period. *See Scott v. Cannon*, 959 S.W.2d 712, 719 (Tex. App.—Austin 1998, pet. denied). Further, several gates were placed across the dirt portion of the road prior to 1981, and the testimony was that the Road past the first gate was not often travelled and that it was travelled either by people seeking permission to travel the Road, or by trespassers.

At trial, Moore admitted that an appraisal district map showed the county road extending past the Ballards' property. The date of this map was not found in the record, and it was not established whether the Mitchells paid taxes on the Road past the 800-foot mark. There was evidence that a 1978 administrator's deed of the Ballards' predecessors referenced a county

14

road.[13] Nelson surmised that no gates would have been present during the 1978 boundary survey of the Ballards' property.[14] This evidence is cited by the Ballards for the proposition that the first element of implied dedication is shown. "[P]reparation and recordation of a map or plat showing streets or roadways does not, standing alone, constitute a dedication as a matter of law." *Gutierrez*, 951 S.W.2d at 839. "This is especially true if the map or plat is not attributed to any act of the landowner, for it is elementary that one cannot lose title to his property through the acts or omissions of others." *Id.* Even assuming that the evidence in this case could somehow indicate donative intent, at best, the deed of the Ballards' predecessors and field notes could only establish that the Road is a county road up to the eastern boundary of the Ballards' property, leaving open the question of whether the remainder of the Road was a public road.

It cannot be forgotten that the focus in an implied dedication case is upon the unequivocal acts or declarations of the landowner demonstrating a public dedication. *Machala*, 56 S.W.3d at 758. "The owner's acts and declarations should clearly and unmistakably show the owner's intent to dedicate the land absolutely and irrevocably to the public's use." *Graff v. Whittle*, 947 S.W.2d 629, 636 (Tex. App.—Texarkana 1997, writ denied). "There can be no private dedication of property to a public use." *McMullen v. King*, 584 S.W.2d 706, 709 (Tex. Civ. App.—Corpus Christi 1979, writ ref'd n.r.e.). Without more, the field notes, deed of the Ballards and their predecessors, and appraisal district map, which was not prepared by the

---

[13]A 2004 deed signed by the Mitchells, past the applicable time period, stated that the easement given to the United States government was adjacent to a public road. This easement language did not specify the length of the county road referenced. Further, the easement was given after the relevant time period.

[14]This evidence does not contradict Berk's testimony that other gates would have been present beyond the Ballard property line during this time frame.

15

Mitchells, does not rise to a level that would enable reasonable and fair-minded people to determine that before 1981, the Mitchells intended to dedicate the entirety of the Road past the 800-foot mark to public use.

Further, Chapter 281 of the Texas Transportation Code sets forth the rules by which a public road may be declared for counties with a population of 50,000 or less. TEX. TRANSP. CODE ANN. § 281.001. Section 258.001 of the Texas Transportation Code states: "Notwithstanding Chapter 281, a county may clarify the existence of a public interest in a road as provided by this chapter." TEX. TRANSP. CODE ANN. § 258.001 (West Supp. 2012). Section 258.002 of the Texas Transportation Code states that a county map adopted by the commissioners court of a county "is conclusive evidence of: (1) the public's right of access over a road included on the map and (2) the county's authority to spend public money to maintain a road included on the map." TEX. TRANSP. CODE ANN. §§ 258.002–258.003 (West Supp. 2012). Here, Lamar County maps dated 1993 and 2007 demonstrated that only a portion of the Road was a county road.

The Ballards were also required to show that the public relied on the acts of dedication, that the public would be served by the dedication, and that there was an offer and acceptance of the dedication. *Machala*, 56 S.W.3d at 757. "Acceptance of dedication can be implied from public use of the land." *Reed*, 155 S.W.3d at 672. Aside from references to trespassers and people who sought permission to use the Road past the first gate, there was an absence of evidence of a "general and customary" public use of the Road, probably due to the fact that several gates ran across the Road prior to 1981. *See Gutierrez*, 951 S.W.2d at 839 n.12;

16

*Machala*, 56 S.W.3d at 758; *see also Lanbright v. Trahan*, 322 S.W.3d 424, 431 (Tex. App.—Texarkana 2010, pet. denied). As described in the Mitchells' briefing, "the portion of the [R]oad . . . declared to be public has no public purpose, runs only along private property, and dead ends into the Mitchells' private property." Also, Layton, the current Lamar County Commissioner, testified that he had no desire to maintain the Road past the first gate.

We conclude that the evidence presented in this case addressing the relevant time period, even when viewed in the light most favorable to the verdict, was so weak as to do no more than create a mere surmise or suspicion that the Mitchells impliedly dedicated the disputed portion of the Road to public use, that the public relied on any acts by the Mitchells and would be served by the dedication, or that there was an offer and acceptance of the dedication prior to 1981. We find the evidence was insufficient to meet the Ballards' heavy burden of proving the elements of implied dedication. The Mitchells' sufficiency points of error are sustained, and the judgment that the Road is "a county road of Lamar County, beginning at its present point of origin at the Texas State Highway 19/24 and continuing east to the Robertson Creek at its point of termination" is reversed.

### D.    Attorney's Fees

The Mitchells ask this Court to reverse the Ballards' award of attorney's fees and award the Mitchells attorney's fees in the amount of $19,515.63. The Ballards requested and obtained attorney's fees under the Declaratory Judgments Act. Under Section 37.009, a trial court may award reasonable and necessary attorney's fees that are "equitable and just." TEX. CIV. PRAC. & REM. CODE ANN. § 37.009 (West 2008). "A prevailing party in a declaratory judgment action is

17

not entitled to attorney's fees simply as a matter of law; entitlement depends on what is equitable and just, and the trial court's power is, in that respect, discretionary." *Moore v. Jet Stream Invs., Ltd.*, 261 S.W.3d 412, 431 (Tex. App.—Texarkana 2008, pet. denied) (quoting *Save Our Springs Alliance, Inc. v. Lazy Nine Mun. Util. Dist*., 198 S.W.3d 300, 319 (Tex. App.—Texarkana 2006, pet. denied)).  The Ballards complain:

> [They] were also forced to litigate the question of whether the first eight hundred feet of the Road was a public road.  Throughout the trial-court proceedings, Appellants continued to assert that the Road in its entirety was a private road.  However, after Appellants had no other choice, they finally admitted that at least a portion of the Road constituted a public road.

As such, the fact that the Mitchells prevailed here does not dictate an attorney's fee award. *Id.*

With this in mind, we note that the trial court might exercise its discretion differently in light of our opinion in this case.  "When a judgment is reversed on appeal, the reversal may affect whether the award of attorney's fees is equitable and just." *Id*.  "The trial court's decision whether to award attorney's fees in a declaratory judgment case depends on the court's conclusion whether it is just and equitable to do so under all the circumstances of the case. . . ." *Id.* (quoting *In re Estate of Kuykendall*, 206 S.W.3d 766, 772 (Tex. App.—Texarkana 2006, no pet.)).  Because our opinion might affect the trial court's determination, we will remand the award of attorney's fees to the trial court for a determination of whether, in light of our opinion, the award is equitable and just.

18

## III.    Conclusion

We reverse the trial court's judgment and remand the matter to the trial court for further proceedings in light of our opinion.

Jack Carter
Justice

Date Submitted:        October 4, 2012
Date Decided:          October 12, 2012