

# Fourth Court of Appeals
### San Antonio, Texas

## MEMORANDUM OPINION

No. 04-12-00358-CV

George T. **CHANEY** and Medina County,
Appellants

v.

Simon **CAMACHO** and Felipe Camacho,
Appellees

From the 38th Judicial District Court, Medina County, Texas
Trial Court No. 11-03-20524-CV
Honorable Stephen B. Ables, Judge Presiding

Opinion by:   Sandee Bryan Marion, Justice

Sitting:       Catherine Stone, Chief Justice
               Sandee Bryan Marion, Justice
               Patricia O. Alvarez, Justice

Delivered and Filed:  December 11, 2013

AFFIRMED

This appeal concerns whether a portion of Medina County Road 674 is a private road or was dedicated to the public. The jury determined the road—which we will refer to as the "disputed road"—was private. The disputed road is an extension of County Road 674, which runs east and west. To the east of FM 471, which runs north and south, the road is referred to as County Road 674 East. From FM 471 heading west to FM 463, which runs north and south, the road is referred to as County Road 674 West. At FM 463, the road continues west for seven-tenths of a mile and it is this unpaved portion of the road that is in dispute. We affirm.

**BACKGROUND**

In 1951 Juan Camacho purchased land in Medina County on which he lived and farmed with his wife and children. Juan died in 2001 and left the property to his wife, who later transferred the property to two of their sons, appellees Simon and Felipe Camacho. Simon later purchased a tract of land adjoining the farm. Appellant, George T. Chaney, purchased his Medina County property in 1980. The Camachos' property and Chaney's property both border FM 463. The disputed road forms a boundary between Chaney's property to the north and the Camachos' property to the south. However, a survey reveals the disputed road lies within the Camacho's property. County Road 674 is identified as Road $190^{1/2}$ in a 1927 plat filed by the Trustees of the San Antonio Trust Subdivision of Lands. At some point in 1979, Road $190^{1/2}$ was renumbered as County Road 674 West.

In the underlying lawsuit, Chaney sued Simon, Felipe, and Medina County asking for a declaratory judgment adjudicating the public status of the disputed road. Chaney asserts the disputed road is a public road that intersects FM 463, and it is one of many public roads dedicated to the public by the Trustees in the plat almost eighty years ago, and has been treated as a county or public road ever since. The Camachos, who claim the road as their private driveway, counter-sued Chaney and Medina County for a declaratory judgment adjudicating the private status of the disputed road. The Camachos contend their property is part of the original San Antonio Trust Lands and that the Trustees merely dedicated several portions of Trust land as "easements" to be used for non-profit purposes. There is no dispute that Chaney's land was never part of the Trust lands.

A jury returned a verdict in favor of the Camachos, answering in the negative the following three questions: (1) was the disputed road expressly dedicated to the public use as a public road, (2) was the disputed road dedicated to the public by implied dedication, and (3) are the Camachos

estopped from denying that the disputed road is a public road? On appeal, Chaney and Medina County (collectively, "appellants") challenge the sufficiency of the evidence supporting these jury findings.

## STANDARD OF REVIEW

The jury was asked about the "public" status of the disputed road, issues on which appellants bore the burden of proof. When the party who had the burden of proof at trial complains of the legal insufficiency of an adverse finding, that party must demonstrate the evidence establishes conclusively (i.e., as a matter of law) all vital facts in support of the finding sought. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001). A reviewing court must examine the record for evidence supporting the adverse finding, ignoring all evidence to the contrary. *Id.* If more than a scintilla of evidence supports the adverse finding, the issue is overruled. *Id.* If there is no evidence to support the adverse finding, the entire record must be examined to determine whether the contrary proposition is established as a matter of law. *Id.* The issue is sustained only if the contrary proposition is conclusively established. *Id.* The ultimate test for legal sufficiency is whether the evidence would enable a reasonable and fair-minded fact finder to reach the verdict under review. *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005).

When a party attacks the factual sufficiency of an adverse finding on an issue on which it had the burden of proof, the party must demonstrate on appeal that the adverse finding is against the great weight and preponderance of the evidence. *Dow Chem.*, 46 S.W.3d at 242. A reviewing court considers all the evidence and will set aside the judgment only if it is so contrary to the overwhelming weight of the evidence that it is clearly wrong and unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986). Under either standard of review, the trier of fact is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *McGalliard v. Kuhlmann*, 722 S.W.2d 694, 697 (Tex. 1986); *see also City of Keller*, 168 S.W.3d at 819.

## PUBLIC USE OF A ROAD

"A road may become public, in the sense that members of the public have the right to use it, by dedication." *Worthington v. Wade*, 82 Tex. 26, 17 S.W. 520, 521 (1891). "Dedication" of a private roadway is the setting aside of land for the public use as a passageway. *Viscardi v. Pajestka*, 576 S.W.2d 16, 18 (Tex. 1978). An owner's intent to dedicate may be either express or implied from the owner's conduct. *Id.* at 19; *Gutierrez v. County of Zapata*, 951 S.W.2d 831, 837 (Tex. App.—San Antonio 1997, no writ). When the owner's intent is not expressly stated in the document, an intent to dedicate is a question of fact. *Id.*

## EXPRESS DEDICATION

In their first and second issues, both Chaney and Medina County assert the trial court erred by denying Chaney's motion for a directed verdict and motion for judgment notwithstanding the verdict because the jury's answer that the disputed road was not expressly dedicated to the public as a public road is legally and factually insufficient.

Generally, an express dedication is accomplished by deed or written instrument. *Gutierrez*, 951 S.W.2d at 837. Two of the elements of an express dedication, which we believe are dispositive here, are whether the owner made either an express or implied dedication, and whether there has been an acceptance of the dedication by local authorities or by the public through use. *Stein v. Killough*, 53 S.W.3d 36, 43 n.2 (Tex. App.—San Antonio 2001, no pet.); *Lindner v. Hill*, 673 S.W.2d 611, 616 (Tex. App.—San Antonio 1984), *aff'd*, 691 S.W.2d 590 (Tex. 1985).

Here, appellants rely on a 1927 Dedication of Plat for their argument that the owners of the disputed road in 1927 (the Trustees) expressly dedicated the road as an easement for public use. The Dedication of Plat reads, in pertinent part, as follows:

> [A]s trustees of the trust known as the "San Antonio Trust" [we] . . . adopt
> the attached and foregoing plat as the subdivision of certain lands held by them as
> trustees and situated in Medina County, Texas. *The public is hereby granted an*

*easement for the use of the roadways shown on said plat or map for ordinary non-profit highway purposes; provided, however, that no person except said trustees hereinabove named, their successors and assigns, shall ever have the right or privilege to use said roadways for any purpose for profit*; provided further that the said trustees hereinabove named for the sole use of themselves as trustees, their successors and assigns hereby expressly reserve and retain the exclusive right and privilege to use said roadways for the purpose of erecting, constructing, maintaining, and repairing thereon and removing therefrom pipelines, telephone and telegraph lines, [etc.].

Perpetual easements for the use of each respective tract shown on said plat or map, and appurtenant in each case to the several tracts which adjoin or are contiguous to each respective tract, are hereby created for the benefit of said trustees hereinabove named, their successors and assigns; said easements are for rights-of-way across and upon each respective tract of land . . . for the erection, construction, maintenance, and repair and removal of pipelines, telephone and telegraph lines, [etc.], and for this purpose the respective beneficiaries of such easements shall have the right of free ingress and egress upon each tract or parcel of land. *The trustees hereinabove named reserve the right and retain the right to, at any time and from time to time, so often as they may desire, close or abandon any road, or any part thereof, upon obtaining the consent of the owner or owners, only of land fronting those parts of such road which is closed or abandoned.* [Emphasis added.]

One of the roads identified in the plat is Road 190$^{1/2}$, which is now known as County Road 674 West, the disputed road. Appellants assert the language stating "the public is hereby granted an easement for the use of the roadways" is an unambiguous dedication of the disputed road as a public road. The Camachos argue this language, at most, grants only a limited, private easement to the owners of the land within the subdivision.

The language in the plat appears to support contradictory conclusions. On the one hand, the plat grants to the public not-for-profit use of the roads, which supports a finding that the Trustees intended a public dedication. Also, we do not believe the use of the word "easement" necessarily means the Trustees did not intend a public dedication of the roads. *See Las Vegas Pecan & Cattle Co. v. Zavala Cnty.*, 682 S.W.2d 254, 256 (Tex. 1984) (court held evidence supported an implied dedication of an easement for public road purposes). On the other hand, the plat does not use the words "dedicate" or "dedication," and the Trustees' reservation of the right

to, "at any time and from time to time, so often as they may desire, close or abandon any road, or any part thereof, upon obtaining the consent of the owner or owners, only of land fronting those parts of such road which is closed or abandoned," provides support for a finding that the Trustees intended only an easement for the benefit of the owners of the Trust lands. Therefore, it was the jury's prerogative to decide the Trustees' actual intent. *See Viscardi*, 576 S.W.2d at 19 (express declarations in deed supported somewhat contradictory conclusions; therefore, it was up to the finder of fact to determine the grantor's actual intent).

We conclude the Trustees' reservation of the right to close any road, as often as they desire, upon consent of the adjoining landowners, indicates the Trustees did not expressly dedicate the road to the public, but instead, intended only an easement for non-profit use by owners of the Trust lands. Also, we do not believe the evidence, as discussed further below, conclusively established the Camachos impliedly dedicated the road or that any dedication was accepted by the County or the public.

## IMPLIED DEDICATION

The jury also found that the disputed road was not impliedly dedicated to the public. "Because an implied dedication results in the appropriation of private property for public use without any compensation to the landowner, [Chaney][1] bore a heavy burden to establish an implied dedication." *Callaghan Ranch, Ltd. v. Killam*, No. 04–10–00802–CV, 2012 WL 394594, at *3 (Tex. App.—San Antonio Feb. 8, 2012, pet. denied) (mem. op.); *Van Dam v. Lewis*, 307 S.W.3d 336, 340 (Tex. App.—San Antonio 2009, no pet.).

The two elements of an implied dedication that we believe are dispositive are whether the Camachos' acts induced the belief that they intended to dedicate the road to public use, and (2)

---

[1] On appeal, Medina County does not challenge the jury's finding that there was no implied dedication.

whether there was an offer and acceptance of the dedication. *Las Vegas Pecan & Cattle Co.*, 682 S.W.2d at 256; *Killam*, 2012 WL 394594, at \*3. What the landowner actually intended is not an element of implied dedication. *Gutierrez*, 951 S.W.2d at 839 n.9. Instead, we examine the landowner's acts to determine whether he induced the belief that he intended to dedicate the road. *Id.* Generally, in order to establish donative intent, more than a landowner's omission or failure to act or acquiesce must be shown.[2] *Baker v. Peace*, 172 S.W.3d 82, 88 (Tex. App.—El Paso 2005, pet. denied). Such evidence may include allowing public authorities to grade, repair, improve, or fence off the roadway from the property. *Id.*

We also note that the common-law doctrine of implied dedication in counties with a population of less than 50,000, such as Medina County here, was abolished by the Texas Legislature in 1981. *See* TEX. TRANSP. CODE ANN. §§ 281.002(3), 281.003 (West 2013); *Hayes v. Anderson County*, 315 S.W.3d 170, 172-73 (Tex. App.—Tyler 2010, pet. denied). Because there is no provision in the statute for retroactive application, it can only be applied prospectively. *See* TEX. TRANSP. CODE §§ 281.002(3), 281.003. As such, the statutory abolishment of implied dedication of public roadways does not affect an implied dedication, which, as here, is alleged to have occurred before the effective date of the statute. *See Scown v. Neie*, 225 S.W.3d 303, 309-10 (Tex. App.—El Paso 2006, pet. denied). If an implied dedication occurred prior to that date by a previous owner, a subsequent purchase of the property does not affect the dedication. *Baker*, 172 S.W.3d at 87. Therefore, we consider only those actions or evidence occurring prior to the statute's effective date of August 31, 1981.

---

[2] Evidence of a long and continued use of a road by the public raises a presumption of dedication by the owner when the origin of the public use and land ownership at the time the public use began are "shrouded in obscurity" and no evidence showing the landowner's intent in allowing the initial public use exists. *Graff v. Whittle*, 947 S.W.2d 629, 637 (Tex. App.—Texarkana 1997, writ denied). We conclude Chaney is not entitled to the presumption of dedication because the origin of the disputed road is not "shrouded in obscurity." Chaney himself relied on the 1927 plat as evidence of the road's origin.

The deeds in the Camachos' chain of title mention Road 190$^{1/2}$ as part of the property boundary description, but the deeds do not indicate whether the road is a county road, public road, or private road. Felipe Camacho testified his family has grown crops and run cattle on a portion of the disputed road. Two other families, the Browns and the Whittakers, lived in trailers on land they owned west of the Camacho property and the disputed road provided the only access to their landlocked property.[3] Another neighbor, Gerald Reynolds, owned land that bordered the disputed road, which dead ends at his fence. Reynolds would occasionally use the disputed road to reach the back part of his property. Felipe said he knew the Browns, the Whittakers, and Mr. Reynolds used the disputed road to access their property. Chaney said he used the front entrance to his property off of FM 463 until his road could not sustain his oil field and cattle traffic because the creek often flooded his access to his front gate, at which point he began using the disputed road to access the back part of his property and he began directing oil field workers to use the disputed road.

Chaney testified that "probably" in 1981 he installed a meter at his oil well on his property and the work was done using the disputed road. He said the Medina Electric Company used the disputed road to run a line from his neighbor's property to his well. Although Chaney testified to use of the disputed road by the electric company, the game warden, and the fire department, he either was unsure of the dates or the dates were post-1981. When asked if "the only reason those entities use [the disputed road] would be because you stopped them and took them down that road," Chaney responded "yes."

This evidence shows at most only that the Camachos acquiesced in the use of the disputed road by their neighbors and their neighbors' invitees. But, mere acquiescence and use of a roadway

---

[3] In 1993, the Browns and Whittakers sold their land to the Camachos.

by landowners, family, friends, guests, and business invitees is not evidence establishing public use. *See Long Island Owner's Ass'n Inc. v. Davidson*, 965 S.W.2d 674, 682 (Tex. App.—Corpus Christi 1998, pet. denied); *McMullen v. King*, 584 S.W.2d 706, 709 (Tex. App.—Corpus Christi 1979, writ ref'd n.r.e.). Additional factors from which donative intent can be inferred must be present to establish an implied dedication. *See Van Dam*, 307 S.W.3d at 341.

One additional factor that may show donative intent is that the road has been maintained by public authorities. *See Baker*, 172 S.W.3d at 85. Richard Lee Johnson, a road and bridge foreman for Medina County Precinct 1, testified the disputed road is within his precinct. Johnson said one of the Medina County Commissioners told him the County was not "doing anything to this road yet." David Montgomery testified he was a Medina County Commissioner for Precinct 1 from 1981 to 1988. Montgomery stated the disputed road was a "county road" when he became commissioner and Medina County maintained the road. Marvin Bendele testified he was a Medina County Commissioner for Precinct 1 from 1989 to 1992. Bendele said that when he took office, he inspected all the roads in his precinct and the disputed road appeared to have been previously maintained. During his tenure, he would occasionally have the road graded and he installed a slab on the road across the creek sometime in 1992. However, Bendele said he did not think the disputed road was a county road until he was told it was by another commissioner in 1989.

The jury also heard testimony from James E. Barden, who has been the Medina County Judge since January 1, 2003 and was on the Commissioners Court when the present dispute first arose. When asked if a county generally owns the actual land, Barden responded, "In some instances we do own the land beneath the road right of way. In the vast majority of cases we do not, we just maintain the county—the public right of way." When asked if an easement is the same as a public right of way, Barden responded "[t]he same effect, generally, yes." However, Barden agreed that not all easements are county roads. When asked if he agreed "that county roads are

used by anybody in the public for one reason or other reason, commercial, noncommercial, profit, not for profit, it doesn't really matter," Barden responded "[b]ut for transportation purposes, yes." Barden testified the county considers the disputed road to be a county road. However, Barden said the county has continuously maintained County Road 674 up to where it stops at FM 463.

Although the above testimony involves possible maintenance of the disputed road after 1981, it could indicate the road was impliedly dedicated before 1981 if there is also evidence suggesting similar maintenance was conducted prior to 1981. Here, no evidence of pre-1981 maintenance was presented. Michael Sorrell, who has lived near the Camachos since 1960 and has been familiar with the disputed road since at least 1956, testified he has never seen anyone from the county doing maintenance work on the disputed road, nor has he seen the general public use the road. The jury heard the deposition testimony of Paul Marbach who worked for a local water system from 1970 to 1981 or 1982; did backhoe work for people, including Chaney in either 1984 or 1985; and has been familiar with the area since the 1950s. Marbach said the disputed road has never been a public road and he has never seen any Medina County employees or equipment on the road. He said the last time he was on the disputed road was in either 1984 or 1985 when he worked for Chaney and Chaney told him to use the disputed road.

Based on our review of the record, we conclude Chaney failed to meet the heavy burden of proof required to show donative intent on the part of either the Camachos or their predecessors. There is testimony that specific individuals used the disputed road, and that the road provided access for emergency and commercial vehicles, but the record does not substantiate any intent to dedicate the disputed road to the public at large. At best, there is evidence that the owners of the road acquiesced in their neighbors' use of their property. For these same reasons, we conclude the record does not conclusively establish the road was accepted as a public road. Therefore, we conclude Chaney has not demonstrated that the evidence conclusively, as a matter of law,

establishes that the disputed road was public. We also conclude the jury's finding that the disputed road was not public is not against the great weight and preponderance of the evidence or so contrary to the overwhelming weight of the evidence that it is clearly wrong and unjust.

## ESTOPPEL BY DEED

The jury found that the Camachos were not estopped from denying that the disputed road was a public road. The jury was instructed as follows:

> A person is estopped from denying that a road is a public road if an easement for public use of the road was reserved or excepted from the deeds through which the owner acquired title to the underlying road or if the persons' title to the land underlying the road is subject to an easement given for public use of the road.

On appeal, Chaney and Medina County challenge the legal and factual sufficiency of the evidence in support of this finding.

The doctrine of estoppel by deed binds all parties to a deed to the recitals contained within the deed, and prevents a party to the deed from denying the truth of the recitals in a valid deed. *Angell v. Bailey*, 225 S.W.3d 834, 841-42 (Tex. App.—El Paso 2007, no pet.). Here, there is no dispute that the deeds in the Camachos' chain of title state the conveyances are subject to easements for roads provided for in the plat. But, as we have already determined, the disputed road was not expressly or impliedly dedicated as a road for public use. Therefore, equitable estoppel does not operate here to prevent the Camachos from claiming the road as private.

## ATTORNEY'S FEES

The Camachos sought and were awarded attorney's fees against Chaney pursuant to the Texas Declaratory Judgment Act. In his final issue on appeal, Chaney asserts the trial court erred in ordering him, and not Medina County, to pay the Camachos' attorney's fees. Chaney does not challenge the sufficiency of the evidence supporting the award or the reasonableness or necessity of the award. Instead, he contends the trial court erred because fairness does not support the award.

Chaney's argument is as follows: "No one should be paying the Camachos' attorney's fees . . . [because they] should not be rewarded for watching Mr. Chaney and others use the Road for 24 years since Mr. Chaney's purchase, and then for starting the fight again in 2010 after losing the decision in the Commissioner's Court in 2005."

Under the Uniform Declaratory Judgments Act, the court "may award . . . reasonable and necessary attorney's fees as are equitable and just." TEX. CIV. PRAC. & REM. CODE ANN. § 37.009 (West 2008). "The reasonable and necessary requirements are questions of fact to be determined by the factfinder, but the equitable and just requirements are questions of law for the trial court to decide." *Ridge Oil Co. v. Guinn Invs., Inc.*, 148 S.W.3d 143, 161 (Tex. 2004). We review a trial court's decision to award attorney's fees under the Act for an abuse of discretion. *Id.* at 162.

Determining whether to award fees, or how much of an award is equitable and just in a given case, are questions committed to the trial court's discretion because of the nature of the issue. *See id.* at 161-63. Whether it is "equitable and just" to award attorney's fees depends, not on direct proof, but on the concept of fairness, in light of all the circumstances of the case. *Id.* at 162. Here, the trial court as well as the jury heard all the evidence adduced at trial, and the jury found in favor of the Camachos. Nothing in the record indicates an award of fees to the Camachos was arbitrary or unreasonable. Based on a review of the record, we cannot say the trial court abused its discretion in awarding the Camachos their attorney's fees.

## CONCLUSION

We overrule Chaney's and Medina County's issues on appeal and affirm the trial court's judgment.

Sandee Bryan Marion, Justice